UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ALESHA T. FULLER,

                                        Plaintiff,
                                                                5:25-cv-0101
v.                                                              (DNH/TWD)

PROCARE LTC, et al.,

                                        Defendant.
_____

APPEARANCES:

ALESHA T. FULLER
*Plaintiff, pro se*
617 Hickory Street #B
Syracuse, NY 13203

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## REPORT-RECOMMENDATION AND ORDER

        The Clerk has sent to the Court for review a complaint filed by *pro se* plaintiff Alesha T.

Fuller ("Plaintiff"). Dkt. No. 1. Plaintiff has not paid the statutory filing fee for this action and

seeks leave to proceed *in forma pauperis* ("IFP"). Dkt. No. 2. She also requests permission to

file documents electronically in ECF. Dkt. No. 4.

## I.    PLAINTIFF'S IFP APPLICATION

        When a civil action is commenced in a federal district court, the statutory filing fee,

currently set at $405.00, must ordinarily be paid. *See* Fed. R. Civ. P. 3. In order to proceed IFP

in federal court, the court must be satisfied by the plaintiff's affidavit that she is unable to pay

the "cost of these proceedings." Dkt. No. 2 at 1; 28 U.S.C. § 1915. "'The purpose of 28 U.S.C.

1915 is to ensure that litigants will not be deprived of access to the judicial system because of

their financial circumstances.'" *Mulqueen v. Herkimer Cnty.*, No. 6:22-CV-1301 (TJM/ATB), 2023 WL 184514, at *1 (N.D.N.Y. Jan. 13, 2023) (quoting *Deep v. Boies*, No. 1:09-MC-73, 2010 WL 11526763, at *1 (N.D.N.Y. Mar. 19, 2010)) (other citation omitted). "Whether to grant an application to proceed IFP rests within the sound discretion of the court." *Id.* (citations omitted).

Section 1915(a)(1) does not set financial guideposts as standards for determining IFP eligibility. The statute provides that IFP status may be granted when the court is satisfied "that the person is unable to pay such fees or give security therefor." 28 U.S.C. § 1915(a)(1). To make this threshold showing, a plaintiff must demonstrate "that paying such fees would constitute a serious hardship on the plaintiff, not that such payment would render plaintiff destitute." *Tucker v. United States*, 142 Fed. Cl. 697, 707 (2019) (citation omitted). "When considering a motion filed pursuant to § 1915(a), "[t]he only determination to be made by the court . . . is whether the statements in the affidavit satisfy the requirement of poverty." *Mulqueen*, 2023 WL 184514, at *1 (alteration in original) (citations omitted). "Such an affidavit will be held sufficient if it represents that the litigant, because of his poverty, is unable to pay for the court fees and costs, and to support and provide necessities for himself and his dependents." *Id.* As the Second Circuit has noted, "[n]o party must be made to choose between abandoning a potential meritorious claim or foregoing the necessities of life." *Potnick v. Eastern State Hosp.*, 701 F.2d 243, 244 (2d Cir. 1983) (citations omitted).

In this case, Plaintiff states in her application that she is currently employed, and reports receiving $1,223.10 in gross pay weekly and $872.20 in net pay weekly. Dkt. No. 2 at 1. She also states, however, that it "Depends on construction hours. hours vary. Some weeks 20 hours others 36 hours, layoff every few day due to weather issues. I worked <u>zero</u> hours this week due

to weather." *Id*. (emphasis in original).  She reports no other sources of income.  *Id*.  Plaintiff

has "no bank account due to this case" and only "$1.24 in cash." *Id*. at 2.  Her reported monthly

expenses total more than $4,500.00.  *See id*.  She owns a 2016 Chevy Equinox and a 2005 Jaguar

S-type.  *See id*.  Plaintiff lists her emotional support dog, Boo, as a dependent.  *See id*.  As for

other debts and financial obligations, Plaintiff reports an "$8,500 remaining balance on 2016

Equinox," and approximately $3000.00 in "overdrawn" credit cards.  *Id*.

    Based upon the information provided in Plaintiff's sworn IFP application, this Court is

not convinced that Plaintiff is "unable to pay the costs of these proceedings" or that paying the

filing fee would pose a "serious hardship" on Plaintiff.  "Federal courts often look to federal

poverty guidelines to determine whether a plaintiff would be subject to serious hardship if

compelled to pay a filing fee." *Mulqueen*, 2023 WL 184514, at *2 (citations omitted).  The

Annual Update of the Poverty Guidelines promulgated by the Department of Health and Human

Services most recently set the poverty guidelines for a one person household in the 48

contiguous States at $15,650.[1]  Accordingly, Plaintiff has not established on this record that

paying the filing fee would present a choice "between abandoning a potential meritorious claim

or foregoing the necessities of life." *Potnick*, 701 F.2d at 244.

    Therefore, the Court recommends that Plaintiff's motion to proceed IFP be denied,[2] and

that Plaintiff be directed to pay the $405.00 filing fee if she wishes to proceed with this action.

---

[1] *See* https://www.federalregister.gov/documents/2025/01/17/2025-01377/annual-update-of-the-hhs-poverty-guidelines (last visited Mar. 17, 2025).

[2] "A decision to deny or revoke IFP status [ ] is generally regarded as dispositive and thus falls outside [a magistrate judge's] purview." *Virola v. Gonyo*, No. 1:24-CV-1393 (LEK/DJS), 2024 WL 5361071, at *2 (N.D.N.Y. Dec. 2, 2024) (quoting *Abreu v. Lira*, No. 9:12-CV-1385 (NAM/DEP), 2014 WL 4966911, at *2 n.1 (N.D.N.Y. Sept. 30, 2014) (citing *Kiobel v. Millson*, 592 F.3d 78, 92 (2d Cir. 2010))), *report and recommendation adopted*, 2025 WL 317243 (N.D.N.Y. Jan. 28, 2025).

## II.    SUFFICIENCY OF PLAINTIFF'S COMPLAINT

### A.    Background

Plaintiff commenced the instant action utilizing the Court's form complaint pursuant to

42 U.S.C. § 1983.  Dkt. No. 1.  The complaint identifies four defendants: (1) ProCare

LTC/Clarest Health ("ProCare"); (2) Jayson Steere, Supervisor; (3) Bob Battaglia,

Manager/Director of Operations; and (4) Kathy Battaglia.  *See* Dkt. No. 1 at 1-3.  Plaintiff

alleges the following facts:

> During my 10 months employed with ProCare I was subjected to
> countess write-ups of false performance evaluations.  I had my
> social media stalked by management, lost wages due to stress from
> management altering my work schedule numerous times.  Defense
> claimed I failed to keep in contact with human resources during
> major internal investigations which are lies.  Attached is proof of
> emails between myself, management, and human resources.

Dkt. No. 1 at 2.  Plaintiff further claims:

> Defense allowed rude acts of behavior(s) from Caucasian employees
> allowing behaviors of bulling, intimidation as well as abandon work
> for the day.  I was subjected to do Caucasian employees workload
> as well as my own.  Failure to do mine and their work resulted in a
> write-up which I asked to challenge.  I was not allowed to.
>
> Once defense were informed of their actions through human
> resources retaliation would immediately follow.  All my infractions
> with management came hours to days after contacting human
> resources.  Attached is text messages, emails from management
> displaying their discrimination and retaliation.  Coworkers were told
> to inform management of my whereabouts after my termination.
>
> Despite ProCare's claims of poor attendance and work ethic,
> defense did not dispute my unemployment as well as my
> performance bonus after my discharge.  ProCare failed to train me.
> I still became one of the top pharmacy techs getting 2 separate pay
> increases making my pay $19 AM $21 PM per hour.  My pharmacy
> technician license was next to obtain before my termination.

*Id*. at 5.

4

As relief, Plaintiff seeks: "$6,000,000 in future/back pay, punitive damages, pain and suffering, compensatory damages, liquidated damages, declaratory relief, injunctive relief and attorney fee.  Restraining Order on Jayson Steere for defamation and stalking my Facebook." *Id.* at 5.  Plaintiff attaches numerous exhibits to her complaint, including her right-to-sue letter from the Equal Employment Opportunity Commission ("EEOC").  *See* Dkt. Nos. 1-1, 5; *see also* Dkt. No. 6.

### B.    Standard of Review

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2); *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998).  The court must also dismiss a complaint, or portion thereof, when the court lacks subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

While the law mandates dismissal on any of these grounds, the court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest arguments that they *suggest*."  *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citation omitted, emphasis in original).  A claim is frivolous when it "lacks an arguable basis either in law or in fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Livingston*, 141 F.3d at 437 ("[A]n action is 'frivolous' when

either: (1) the factual contentions are clearly baseless . . . or (2) the claim is based on an indisputably meritless legal theory.").

Additionally, when reviewing a complaint, a court may look to the Federal Rules of Civil Procedure.  To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2).  This short and plain statement of the claim must be "plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citations omitted).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

Generally, a court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted).  However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## C.    Analysis

The Court liberally construes the complaint as asserting claims pursuant to 42 U.S.C. §
1983 ("Section 1983") and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.
("Title VII").  For reasons discussed below, Plaintiff fails to plausibly allege violations under
either statute.  Therefore, the undersigned recommends dismissal of the complaint in its entirety
pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim.

### 1.    Section 1983

Plaintiff purportedly brings this action pursuant to 42 U.S.C. § 1983, which "establishes a
cause of action for 'the deprivation of any rights, privileges, or immunities secured by the
Constitution and laws' of the United States."  *German v. Fed. Home Loan Mortg. Corp.*, 885 F.
Supp. 537, 573 (S.D.N.Y.) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990)
(quoting 42 U.S.C. § 1983)).  "Section 1983 itself creates no substantive rights; it provides only a
procedure for redress for the deprivation of rights established elsewhere."  *Sykes v. James*, 13
F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

A claim for relief under Section 1983 must allege facts showing that the defendant acted
under color of a state "statute, ordinance, regulation, custom or usage."  42 U.S.C. § 1983.
Private parties are not liable under § 1983 unless they act under color of state law.  *See Hooda v.
Brookhaven Nat. Lab.*, 659 F. Supp. 2d 382, 392 (E.D.N.Y. 2009); *see also Benjamin v.
Brookhaven Sci. Assocs., LLC*, 387 F. Supp. 2d 146, 156 (E.D.N.Y. 2005) ("[T]he [plaintiff's]
section 1983 action is not cognizable against the [d]efendant because there are no allegations that
it is a state or municipal entity acting under color of state law as required by 42 U.S.C. § 1983.").
A plaintiff "bears the burden of proof on the state action issue."  *Hadges v. Yonkers Racing
Corp.*, 918 F.2d 1079, 1083 n.3 (2d Cir. 1990).

Here, Plaintiff does not allege any of the named defendants were acting under color of state law.  *See generally* Dkt. No. 1.  Defendant ProCare appears to be a private business,[3] and the individual defendants are private parties.  Private conduct is simply beyond the reach of Section 1983 "no matter how discriminatory or wrongful that conduct may be."  *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999); *Rendell-Baker v. Kohn*, 457 U.S. 830, 838-42 (1982); *Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013); *cf. Crawley v. Nat'l Life Ins. Co. of Vt.*, 318 F.3d 105, 111 (2d Cir. 2003) ("For the conduct of a private entity to be fairly attributable to the state, there must be such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself.") (internal quotation marks and citation omitted)).

Accordingly, the Court recommends dismissal of Plaintiff's Section 1983 claims for failure to state a claim upon which relief may be granted.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii).  Out of an abundance of caution, the Court recommends the dismissal be without prejudice and with leave to amend.

## 2.    Title VII

Title VII provides that "every person, whether a citizen or not, has a right to be free from discrimination in employment on the basis of race, color, gender, national origin, or religion."  42 U.S.C. § 2000e-3(a).  Upon review, Plaintiff's complaint does not state a claim under Title VII for two reasons.  First, Plaintiff has not alleged her employer mistreated her *because* of her race, color, religion, sex, or national origin.  *See generally* Dkt. No. 1.  Second, "individual defendants cannot be held personally liable under Title VII."  *Milner-Koonce v. Albany City Sch.*

---

[3] The Court takes judicial notice that "PROCARE LTC OF SYRACUSE LLC" is a domestic limited liability company.  *See* https://apps.dos.ny.gov/publicInquiry/EntityDisplay (last visited Mar. 18. 2025).

*Dist.*, No. 1:21-CV-1271 (LEK/CFH), 2022 WL 7351196, at *3 (N.D.N.Y. Oct. 13, 2022) (citing *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 221 (2d Cir. 2004) (affirming the district court's dismissal of "Title VII claims against the individual defendants") (other citations omitted)); *Chisholm v. Stryker*, No. 22-CV-2705, 2022 WL 3647288, at *4 n.2 (E.D.N.Y. Aug. 24, 2022) ("[I]t is long established that individuals are not subject to liability under Title VII.").

Accordingly, the Court recommends dismissal of Plaintiff's Title VII claims for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). It is not clear to the Court whether Plaintiff could state a cognizable claim under Title VII against Defendant ProCare. Therefore, the Court recommends the dismissal against Defendant ProCare be without prejudice and with leave to amend. However, the Court recommends that Plaintiff's Title VII claims asserted against Defendants Jayson Steere, Bob Battaglia, and Kathy Battaglia be dismissed without leave to amend because the problem is substantive such that a better pleading will not cure it. *See Wright v. Martin, Harding & Mazzotti, LLP*, No. 1:22-CV-0515 (MAD/ML), 2022 WL 19795849, at *8 (N.D.N.Y. July 19, 2022) (recommending the plaintiff's Title VII claim against individuals be dismissed without leave to amend), *report and recommendation adopted*, 2023 WL 2910511 (N.D.N.Y. Apr. 12, 2023).

### 3.    State Law Claims

A federal court may, in its discretion, exercise supplemental jurisdiction over a state law claim, but only to the extent it is accompanied by a claim over which the court has original jurisdiction. *See* 28 U.S.C. § 1367 ("[E]xcept [in limited circumstances], in any civil action of which the district courts have original jurisdiction, the district court shall have supplemental jurisdiction over all other claims that are so related[.]").

In light of the above recommendations, the Court also recommends declining to exercise supplemental jurisdiction over any purported state law claims. *See Kolari v. New York Presbyterian Hosp.*, 455 F.3d 118, 120 (2d Cir. 2006) (district court has discretion to decline to exercise supplemental jurisdiction over state law claims because all claims over which the federal court has jurisdiction have been dismissed).

## III. PLAINTIFF'S MOTON FOR PERMISSION TO FILE ELECTRONICALLY

Plaintiff has also submitted a motion for permission to file documents electronically in ECF. *See* Dkt. No. 4. Given the foregoing recommendations, Plaintiff's motion is denied without prejudice and with leave to renew at a later stage in these proceedings, if warranted.

## IV. CONCLUSION

**WHEREFORE**, it is hereby

**RECOMMENDED** that Plaintiff's IFP application (Dkt. No. 2) be **DENIED**; and it is further

**RECOMMENDED** that Plaintiff be directed to pay the filing fee of $405.00 if she wishes to proceed with this action; and it is further

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted; and it is further

**RECOMMENDED** that Plaintiff be granted an opportunity to file an amended complaint that cures the pleading defects identified in this Report-Recommendation;[4] and it is further

---

[4] The amended complaint must comply with Rules 8 and 10 of the Federal Rules of Civil Procedures. Plaintiff must set forth all of the claims she intends to assert and must demonstrate that a case or controversy exists between the Plaintiff and the Defendants which Plaintiff has a

**ORDERED** that Plaintiff's motion for permission to file electronically in ECF (Dkt. No. 4) is **DENIED WITHOUT PREJUDICE AND WITH LEAVE TO RENEW** at later stage in these proceedings, if warranted; and it is further

**ORDERED** that the Clerk mail a blank Title VII complaint to Plaintiff; and it is further

**ORDERED** that the Clerk provide to Plaintiff a copy of this Report-Recommendation and Order, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.[5]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

---

legal right to pursue and over which this Court has jurisdiction.  She must clearly set forth the facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts.  Any such amended complaint will replace the existing complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court.  *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (internal quotation marks omitted)).  Any exhibits that Plaintiff wishes the Court to consider going forward, including her right-to-sue letter, must be attached to the amended complaint.  Piecemeal pleadings are not permitted.  *See* Dkt. No. 6.

[5] If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

**IT IS SO ORDERED.**

Dated: March 19, 2025
          Syracuse, New York

Therèse Wiley Dancks
United States Magistrate Judge

Case 5:25-cv-00101-DNH-TWD    Document 7    Filed 03/19/25    Page 13 of 60

Mulqueen v. Herkimer County, Not Reported in Fed. Supp. (2023)

2023 WL 184514

🚩 KeyCite Yellow Flag - Negative Treatment

Remanded by *Mulqueen v. Herkimer County,* N.D.N.Y., June 13, 2023

2023 WL 184514
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Wendy S. MULQUEEN and
Brian G. Mulqueen, Plaintiffs,
v.
HERKIMER COUNTY, et al., Defendants.

6:22-CV-1301 (TJM/ATB)
|
Signed January 13, 2023

**Attorneys and Law Firms**

WENDY S. MULQUEEN, Plaintiff, pro se.

BRIAN G. MULQUEEN, Plaintiff, pro se.

**ORDER and REPORT-RECOMMENDATION**

ANDREW T. BAXTER, United States Magistrate Judge

**\*1** The Clerk has sent to the court for review a complaint brought pursuant to 42 U.S.C. § 1983, filed by husband-and-wife plaintiffs Brian and Wendy Mulqueen. (Dkt. No. 1) ("Compl."). Plaintiffs have also moved to proceed in forma pauperis ("IFP") (Dkt. Nos. 2, 3), and for appointment of counsel. (Dkt. Nos. 4, 5).

**I. In Forma Pauperis ("IFP") Applications**

**A. Legal Standards**

In order to proceed IFP in federal court, the court must be satisfied by plaintiffs' affidavits that they are unable to pay the "cost of these proceedings." (Dkt. Nos. 2 at 1; 3 at 1); 28 U.S.C. § 1915. " 'The purpose of 28 U.S.C. 1915 is to ensure that litigants will not be deprived of access to the judicial system because of their financial circumstances.' " *Deep v. Boies,* No. 1:09-MC-73, 2010 WL 11526763, at \*1 (N.D.N.Y. Mar. 19, 2010) (quoting *Monti v. McKeon,* 600 F. Supp. 112, 114 (D. Conn. 1984)) (citing *Harlem River Consumers Co-op, Inc. v. Associated Grocers of Harlem, Inc.,* 71 F.R.D. 93, 96 (S.D.N.Y. 1976)). Whether to grant an application to proceed IFP rests within the sound discretion of the court. *Id.* (citing

*Monti,* 600 F. Supp. at 113). " 'There is surprisingly sparse number of cases which apply the general indigency standards to particular fact situations.' " *Id.* (quoting *In re Koren,* 176 B.R. 740, 744 (E. D. Pa. 1995)).

Section 1915(a)(1) does not set financial guideposts as standards for determining IFP eligibility. The statute provides that IFP status may be granted when the court is satisfied "that the person is unable to pay such fees or give security therefor." 28 U.S.C. § 1915(a)(1). To make this threshold showing, a plaintiff must demonstrate " 'that paying such fees would constitute a serious hardship on the plaintiff, not that such payment would render plaintiff destitute.' " *Tucker v. United States,* 142 Fed. Cl. 697, 707 (2019) (quoting *Fiebelkorn,* 77 Fed. Cl. 59, 62 (2007)); *Deep,* 2010 WL 11526763, at \*1 (quoting *Fiebelkorn,* 77 Fed. Cl. at 62) (citing *Adkins v. E.I. DuPont de Nemours & Co.,* 335 U.S. 331, 339 (1948)). When considering a motion filed pursuant to § 1915(a), " '[t]he only determination to be made by the court ... is whether the statements in the affidavit satisfy the requirement of poverty.' " *Martinez v. Kristi Kleaners, Inc.,* 364 F.3d 1305, 1307 (11th Cir. 2004) (quoting *Watson v. Ault,* 525 F.2d 886, 891 (5th Cir. 1976)) (alteration in original). "Such an affidavit will be held sufficient if it represents that the litigant, because of his poverty, is unable to pay for the court fees and costs, and to support and provide necessities for himself and his dependents." *Id.* As the Second Circuit has noted, "[n]o party must be made to choose between abandoning a potential meritorious claim or foregoing the necessities of life." *Potnick v. Eastern State Hosp.,* 701 F.2d 243, 244 (2d Cir. 1983)(citing *Adkins,* 335 U.S. at 339).

**B. Application**

In this case, plaintiff Brian Mulqueen states in his application that he is currently employed, that his yearly gross pay is approximately $74,000, and that he receives $878.42 in net pay weekly. (Dkt. No. 3 at 1). Mr. Mulqueen's wife, Wendy Mulqueen, indicates that she is not employed, but appears to receive $650.00 a month in "rent payments, interest, or dividends." (Dkt. No. 2 at 1). The plaintiffs have not identified any debts or financial obligations, and state that they make monthly payments toward their mortgage, car, utilities and food. (Dkt. Nos. 2 at 2; 3 at 2). They further represent that they contribute "full support" to their six children [1] and a 45 year-old "sister." (*Id.*). The plaintiffs state that they have "$0" in cash or in a checking or savings account. (*Id.*).

Mulqueen v. Herkimer County, Not Reported in Fed. Supp. (2023)

2023 WL 184514

1    The children's ages are as follows: 4, 7, 11, 13, 18, and 23. (Dkt. Nos. 2 at 2; 3 at 2).

**\*2** Based upon the information provided in the plaintiffs' motions, this court is not convinced that plaintiffs are "unable" to pay the filing fee, or that paying a filing fee would pose a "serious hardship" on the plaintiffs. Federal courts often look to federal poverty guidelines to determine whether a plaintiff would be subject to serious hardship if compelled to pay a filing fee. *See, e.g., Andrews v. U.S. Bank Nat'l Ass'n,* No. 3:22-CV-00456, 2022 WL 2287689, at \*1 (D. Conn. Apr. 8, 2022) (looking to federal poverty guidelines to determine IFP status); *Fuentes v. United States,* 100 Fed. Cl. 85, 92 (2011) (same). Here, Mr. Mulqueen's gross income of over $70,000 alone places the plaintiffs above the federal poverty guidelines for even their purported nine person household. 2 The Annual Update of the Poverty Guidelines promulgated by the Department of Health and Human Services most recently set the poverty guidelines for a family of nine in the 48 contiguous States at $51,350. 3 Accordingly, the plaintiffs have not established on this record that paying the filing fee would present them with a choice "between abandoning a potential meritorious claim or foregoing the necessities of life." *Potnick,* 701 F.2d at 244. The court thus recommends that the district court dismiss plaintiffs' complaint without prejudice if they do not submit the filing fee within thirty (30) days of the filing date of this Report-Recommendation and Order. 4

2    "In assessing an application to proceed in forma pauperis, a court may consider the resources that the applicant has or 'can get' from those who ordinarily provide the applicant with the 'necessities of life,' such as 'from a spouse.' " *Fridman v. City of N.Y.,* 195 F. Supp. 2d 534, 537 (S.D.N.Y. 2002) (quoting *Williams v. Spencer,* 455 F. Supp. 205, 208-09 (D. Md. 1978)).

3    *See* https://www.federalregister.gov/documents/2022/01/21/2022-01166/annual-update-of-the-hhs-poverty-guidelines.

4    A decision to deny IFP status is typically regarded as dispositive. *Abreu v. Lira,* No. 9:12-CV-1385(NAM/DEP), 2014 WL 4966911, at \*2 n.1 (N.D.N.Y. Sept. 30, 2014) (citing *Kiobel v. Millson,* 592 F.3d 78, 92 (2d Cir. 2010)). Accordingly, the court has recommended to the

District Court denial of plaintiff's application for IFC status.

## II. Appointment of Counsel

### A. Legal Standards

There is no right to appointment of counsel in civil matters. *Burgos v. Hopkins,* 14 F.3d 787, 789 (2d Cir. 1994). Title 28 of United States Code Section 1915 specifically provides that a court may request an attorney to represent any person "unable to afford counsel." 28 U.S.C. § 1915(e)(1). Appointment of counsel must be done carefully in order to preserve the "precious commodity" of volunteer lawyers for those litigants who truly need a lawyer's assistance. *Cooper v. A. Sargenti, Inc.,* 877 F.2d at 172-73.

Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin,* 114 F.3d 390, 392-93 (2d Cir. 1997). Instead, a number of factors must be carefully considered by the Court in ruling upon such a motion. As a threshold matter, the Court should ascertain whether the indigent's claims seem likely to be of substance. If so, the Court should then consider:

> The indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz,* 28 F.3d 1335, 1341 (2d Cir. 1994) (quoting *Hodge v. Police Officers,* 802 F.2d 58, 61 (2d Cir. 1986)). This is not to say that all, or indeed any, of these factors are controlling in a particular case. Rather, each case must be decided on its own facts. *Velasquez v. O'Keefe,* 899 F. Supp. 972, 974 (N.D.N.Y. 1995) (citing *Hodge,* 802 F.2d at 61).

### B. Analysis

As previously set forth, plaintiffs have not established that they qualify for IFP status based on the record presently

Case 5:25-cv-00101-DNH-TWD    Document 7    Filed 03/19/25    Page 15 of 60
Mulqueen v. Herkimer County, Not Reported in Fed. Supp. (2023)
2023 WL 184514

before this court. For those same reasons, the court is not convinced that plaintiffs have established entitlement to the appointment of counsel on the basis of indigency, pursuant to 28 U.S.C. § 1915(e)(1).

**\*3** Moreover, this action was only recently commenced, and the only facts upon which this court may base its decision as to whether this lawsuit is of substance are the facts stated in plaintiffs' complaint. Even if the court had granted plaintiffs' IFP status and allowed this case to go forward, where there are merely unsupported allegations, the moving party does not meet the first requirement imposed by the Second Circuit for appointment of pro bono counsel. *See Harmon v. Runyon,* No. 96 Civ. 6080, 1997 WL 118379 (S.D.N.Y. Mar. 17, 1997); *see also Creach v. Doe,* No. 1:20-CV-199 (DNH/CFH), 2020 WL 4721434, at \*8 (N.D.N.Y. June 16, 2020), *report and recommendation adopted,* 2020 WL 4698507 (N.D.N.Y. Aug. 12, 2020) ("Where a plaintiff does not provide a Court with evidence, as opposed to mere allegations, relating to his claims against the defendants, he does not meet the first requirement imposed by the Second Circuit relative to application seeking appointment of counsel."). Thus, the court will deny appointment of counsel at this time, without prejudice.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that plaintiffs' motions to proceed IFP (Dkt. Nos. 2, 3) be **DENIED,** and that the district court dismiss the plaintiffs' complaint without prejudice if they do not submit the filing fee within thirty (30) days of this Report-Recommendation and Order, and it is

**ORDERED**, that plaintiffs' motions for appointment of counsel (Dkt. Nos. 4, 5) are **DENIED WITHOUT PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

**All Citations**

Not Reported in Fed. Supp., 2023 WL 184514

---

End of Document

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Deep v. Boies, Not Reported in Fed. Supp. (2010)

Case 5:25-cv-00101-DNH-TWD    Document 7    Filed 03/19/25    Page 16 of 60

2010 WL 11526763

2010 WL 11526763
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

John A. DEEP, Plaintiff,
v.
David BOIES, et al., Defendants.

Civ. Action No. 1:09–MC–73 (DNH/DEP)
|
Signed 03/19/2010

**Attorneys and Law Firms**

John A. Deep, Cohoes, NY, pro se.

Adam R. Shaw, George F. Carpinello, Boies, Schiller & Flexner LLP, Mark T. Walsh, Gleason Dunn Walsh & O'Shea, Albany, NY, for Defendants.

DECISION AND ORDER

David E. Peebles, U.S. Magistrate Judge

**\*1** By order issued on January 8, 2010 by District Judge David N. Hurd, plaintiff's motions to vacate the registration in this district of a judgment from the District of Maine and to quash subpoenas issued in aid of enforcement of the judgment registered in this district were denied, and judgment was accordingly entered. *See* Dkt. Nos. 13 and 14. Plaintiff has appealed the court's order and resulting judgment to the Second Circuit Court of Appeals. *See* Dkt. No. 18. Presently before the court is plaintiff's application to proceed *in forma pauperis* in connection with his appeal of this matter, which defendants have opposed. *See* Dkt. Nos. 21 and 23.

Where a plaintiff seeks leave to proceed *in forma pauperis,* the court must determine whether the plaintiff has demonstrated sufficient economic need to proceed without prepaying, in full, the $450.00 fee for filing an appeal.

28 U.S.C. § 1915(a)(1) authorizes a court to permit a litigant to proceed IFP, if it is determined that he or she is unable to pay the required filing fee. [1] "The purpose of 28 U.S.C. 1915 is to ensure that litigants will not be deprived of access to the judicial system because of their financial circumstances." *Monti v. McKeon,* 600 F. Supp. 112, 114 (D. Conn. 1984) (citing *Harlem River Consumers Co-op, Inc. v. Associated*

*Grocers of Harlem, Inc.,* 71 F.R.D. 93, 96 (S.D.N.Y. 1976)). The decision of whether to grant an application to proceed IFP rests within the sound discretion of the court. *Id.,* 600 F. Supp. at 113. "There is surprisingly sparse number of cases which apply the general indigency standards to particular fact situations." *In re Koren,* 176 B.R. 740, 744 (E. D. Pa. 1995).

[1]    The language of that section, which is admittedly ambiguous, suggests an intent to limit availability of IFP status under that provision to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing pursuit of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets *such prisoner* possesses ...") (emphasis added). The courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. *Fiebelkorn v. U.S.,* 77 Fed. Cl. 59, 60 n. 1 (Fed. Ct. Cl. 2007)(citing *Hayes v. U. S.,* 71 Fed. Cl. 366, 367 (Fed. Cl. 2006)).

As a standard for determining eligibility for IFP status, section 1915(a)(1) does not set financial guideposts; instead, the statute merely provides that IFP status may be granted when the court is satisfied "that the person is unable to pay such fees or give security therefor." 28 U.S.C. § 1915(a)(1). To make this threshold showing a plaintiff must demonstrate "that paying such fees would constitute a serious hardship on the plaintiff, not that such payment would render plaintiff destitute." *Fiebelkorn v. U. S.,* 77 Fed. Cl. at 62 (citing *Adkins v. E.I. DuPont de Nemours & Co.,* 335 U.S. 331, 339, 69 S. Ct. 85 (1948)). Put another way, section 1915(a)(1) does not require a showing of absolute destitution to qualify for IFP status. *Lee v. McDonald's Corp.,* 231 F.3d 456, 458 (8th Cir. 2000). As the Second Circuit has noted, "[n]o party must be made to choose between abandoning a potential meritorious claim or foregoing the necessities of life." *Potnick v. Eastern State Hosp.,* 701 F.2d 243, 244 (2d Cir. 1983)(citing *Adkins,* 335 U.S. at 339, 69 S. Ct. at 89).

**\*2**    Having carefully reviewed plaintiff's IFP application, I find that plaintiff's application fails to contain sufficient information for the court to make the determination whether payment for the required fee would impose a serious hardship on him. In his IFP application, Deep simply states in wholly conclusory fashion that "... unless the allegedly registered judgment is limited or modified to permit [him] to pay the docket fees, [he] cannot prepay the docket fees for [his] appeal or post a bond for them." *See* Dkt. No. 21, p. 2 at ¶ 3. It should be noted that when this action was commenced in

Deep v. Boles, Not Reported in Fed. Supp. (2010)
Case 5:25-cv-00101-DNH-TWD    Document 7    Filed 03/19/25    Page 17 of 60

2010 WL 11526763

this district the plaintiff paid the requisite $39.00 fee for filing a miscellaneous case in this district. It may be that plaintiff is lacking in assets not reflected in his application and has undisputed debts or other encumbrances which would inform the IFP analysis and alter the result. At this juncture, however, the court is unable to conclude that plaintiff is indigent and thus entitled to IFP status. [2] Accordingly, the court will deny plaintiff's application for IFP status without prejudice. Plaintiff, however, may file a renewed application which sets forth additional information regarding his financial condition, or he must pay the $450.00 filing fee for the appeal of this matter in full.

[2]    Factors potentially relevant to IFP status include marital status and number of dependents, place of residence, nature of employment, earning potential, unencumbered assets, possible aid from friends and relatives and/or charities, the particular cost relative to the applicant's financial means. *In re Koren*, 176 B.R. at 744.

WHEREFORE, it is hereby

ORDERED, that plaintiff's application to proceed with the appeal of this matter *in forma pauperis* (Dkt. No. 21) is DENIED, without prejudice; and it is further

ORDERED, that the Clerk serve a copy of this order on the plaintiff by regular mail and upon defendants' counsel by electronic means.

**All Citations**

Not Reported in Fed. Supp., 2010 WL 11526763

---

End of Document    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:25-cv-00101-DNH-TWD    Document 7    Filed 03/19/25    Page 18 of 60

Milner-Koonce v. Albany City School District, Not Reported in Fed. Supp. (2022)

2022 WL 7351196

KeyCite Red Flag - Severe Negative Treatment
Report and Recommendation Adopted in Part, Rejected in Part by  Milner-
Koonce v. Albany City School District,  N.D.N.Y.,  June 1, 2023

2022 WL 7351196
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Samantha C. MILNER-KOONCE, Plaintiff,

v.

ALBANY CITY SCHOOL
DISTRICT, et al., Defendants.

No. 1:21-CV-1271 (LEK/CFH)
|
Signed October 13, 2022

**Attorneys and Law Firms**

Samantha C. Milner-Koonce, 58 Kent Street, Albany, New
York 12206, Plaintiff pro se.

**REPORT-RECOMMENDATION and ORDER**

Christian F. Hummel, United States Magistrate Judge

**I. Background**

 *1  Plaintiff pro se Samantha C. Milner-Koonce ("plaintiff")
commenced this action on November 29, 2021, with the
filing a complaint and an application to proceed in forma
pauperis ("IFP"). See Dkt. No. 1 ("Compl."); Dkt. No. 2.
In a Report-Recommendation and Order dated May 12,
2022, the undersigned: (1) granted plaintiff's IFP application;
(2) ordered that plaintiff's Americans with Disabilities Act
("ADA") retaliation claim and Family Medical Leave Act
("FMLA") claim against defendant Albany City School
District ("School District") proceed; (3) recommended that
plaintiff's claims against the School District for discrimination
under the ADA, Equal Pay Act ("EPA"), Genetic Information
Nondiscrimination Act ("GINA"), and Title VII, and state
law intentional infliction of emotional distress claim be
dismissed without prejudice and with leave to amend; and (4)
recommended that the claims against defendant Honeywell
Law Firm be dismissed with prejudice and without leave to
amend. See Dkt. No. 5. Plaintiff filed objections to the Report-
Recommendation and Order, see Dkt. No. 7, and on June
29, 2022, Senior District Judge Kahn adopted the Report-

Recommendation and Order in its entirety. See Dkt. No. 9.
Presently before the Court is plaintiff's amended complaint for
review pursuant to 28 U.S.C. § 1915. See Dkt. No. 10 ("Am.
Compl.").

**II. Initial Review of Amended Complaint**

**A. Legal Standard**

Section 1915 [1] of Title 28 of the United States Code directs
that, when a plaintiff seeks to proceed IFP, "the court shall
dismiss the case at any time if the court determines that ... the
action or appeal (i) is frivolous or malicious; (ii) fails to state a
claim on which relief may be granted; or (iii) seeks monetary
relief against a defendant who is immune from such relief."
28 U.S.C. § 1915(e)(2)(B). It is a court's responsibility to
determine that a plaintiff may properly maintain his complaint
before permitting him to proceed with his action.

[1]      The language of 1915 suggests an intent to
limit availability of IFP status to prison inmates.
See 28 U.S.C. § 1915(a)(1) (authorizing the
commencement of an action without prepayment
of fees "by a person who submits an affidavit that
includes a statement of all assets such prisoner
possesses"). The courts have construed that section,
however, as making IFP status available to any
litigant who can meet the governing financial
criteria. See, e.g., Fridman v. City of N.Y., 195 F.
Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

Where, as here, the plaintiff proceeds pro se, "the court
must construe his [or her] submissions liberally and interpret
them to raise the strongest arguments that they suggest."
Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir.
2014) (per curiam) (citation and internal quotation marks
omitted). This does not mean the Court is required to accept
unsupported allegations that are devoid of sufficient facts
or claims. Although detailed allegations are not required at
the pleading stage, the complaint must still include enough
facts to provide the defendants with notice of the claims
against them and the grounds on which these claims are
based. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell
Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007). Pro se
litigants are "not exempt ... from compliance with relevant
rules of procedural and substantive law[.]" Traguth v. Zuck,
710 F.2d 90, 95 (2d Cir. 1983) (citation omitted). Ultimately,
the plaintiff must plead "enough facts to state a claim to relief

Case 5:25-cv-00101-DNH-TWD   Document 7   Filed 03/19/25   Page 19 of 60
Milner-Koonce v. Albany City School District, Not Reported in Fed. Supp. (2022)
2022 WL 7351196

that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted).

**\*2** Pleading guidelines are set forth in the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). Specifically, Rule 8 provides that a pleading which sets forth a claim for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Rule 8 also requires the pleading to include "a short and plain statement of the grounds for the court's jurisdiction" and "a demand for the relief sought...." FED. R. CIV. P. 8(a)(1), (3). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Id. at 8(d)(1).

Further, Rule 10 provides in pertinent part that:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 55 (internal quotation marks and citations omitted). A complaint that fails to comply with the pleading requirements "presents far too [ ] heavy [a] burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). The

Second Circuit has held that "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citation omitted). However, "[d]ismissal ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citation omitted). If dismissal is warranted and the plaintiff is pro se, the court generally affords the plaintiff leave to amend the complaint. See Simmons v. Abruzzo, 49 F.3d 83, 86-87 (2d Cir. 1995).

### B. Plaintiff's Amended Complaint

Plaintiff's amended complaint is nearly identical to her original complaint, with the only cognizable differences being (1) she describes her disabilities and a workplace incident that resulted in her needing to take medical leave, and (2) she names individual defendants and does not explicitly name the School District as a defendant. See Am. Comp. at 2-7. In summary, plaintiff contends that Kaweeda Adams, the Superintendent of the School District; Lori McKenna, the "Assistant Superintendent of Middle School"; Matthew Petrin, a Human Resources Administrator; Andrea West, a Human Resources Assistant Administrator; and William Rivers, the Stephen and Harriet Myers Middle School Principal discriminated and retaliated against plaintiff because of her numerous disabilities and her use of medical leave. See id. at 2. Plaintiff asserts that on May 17, 2018, to separate students during a fight, plaintiff was forced to hold a door closed using her hands, back, buttocks, and left shoulder, hip, and foot. See id. at 3-4, ¶ 7. Plaintiff states that she suffers from anxiety, depression, a blood clot disorder, and shoulder, back, neck, and knee impairments. See id. at 4-7, ¶¶ 9-26. Plaintiff seeks "general damages," punitive damages, and payment for "all filing fees, services and or other fees associated with the filing of this claim." Id. at 40-41. Plaintiff asserts (1) discrimination, retaliation, and hostile work environment claims under the ADA; (2) a Title VII discrimination claim; (3) an FMLA claim; (4) a GINA claim; (5) discrimination, retaliation, and hostile work environment claims under the New York State Human Rights Law ("NYSHRL"); and (6) parallel claims under the New York City Human Rights Law ("NYCHR"). See id. at 1, 36. [2]

[2]    For a complete recitation of the facts, the undersigned incorporates by reference its May

Milner-Koonce v. Albany City School District, Not Reported in Fed. Supp. (2022)

2022 WL 7351196

12, 2022, Report-Recommendation and Order. See Dkt. No. 5 at 4-15. To the extent plaintiff's amended complaint contains additional allegations, they will be addressed in the undersigned's analysis of the relevant claims.

**\*3** In plaintiff's list of defendants, she does not name "Albany City School District" and lists only the individual defendants. Am. Compl. at 2. However, plaintiff lists the individual defendants' addresses as the School District, she repleads factual allegations directly against the School District, and she seeks, in part, "[g]eneral damages, for the failure to act, intervene, and or regulate, the bullying, harassment, pain and suffering plaintiff endured during the 2020-2021 school year under the supervision of principal Rivers and at the hands of Albany City School District[.]" Id. at 40, ¶ 184 (emphasis omitted). Given the special solicitude afforded to pro se plaintiffs, the undersigned construes plaintiff's amended complaint as against the five-named individual defendants and the School District. As such, the Clerk of Court is ordered to reinstate the School District as a defendant on the docket.

### C. Analysis [3]

[3]    All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

#### 1. ADA Retaliation Claim and FMLA Claim against the School District

Following initial review of plaintiff's original complaint, Judge Khan adopted the undersigned's Report-Recommendation and Order and ordered that plaintiff's ADA retaliation claim and FMLA claim proceed. See Dkt. No. 9 at 12; see also Dkt. No 5 at 30. Plaintiff has sufficiently realleged the supporting facts for both claims in her amended complaint; therefore, the undersigned need not address those claims against the School District already permitted to proceed. The undersigned makes no determination on the merits of either claim.

#### 2. Title VII Claim

Plaintiff states that "[t]his is a civil action seeking judgment, relief and/or damages brought pursuant to the Employment Discrimination Act, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17, for employment discrimination based on national origin." Am. Compl. at 1, ¶ 1. As an initial matter, "individual defendants cannot be held personally liable under Title VII." Chauca v. Abraham, 841 F.3d 86, 89, n.1 (2d Cir.) (citation omitted), as amended (Nov. 8, 2016), certified question accepted, 68 N.E.3d 76 (2016), and certified question answered, 89 N.E.3d 475 (2017). As such, it is recommended that the purported Title VII claim against the individual defendants be dismissed with prejudice. See Patterson v. Cnty. of Oneida, N.Y., 375 F.3d 206, 221 (2d Cir 2004) (affirming the district court's dismissal of "Title VII claims against the individual defendants.").

As against the School District, "Title VII provides, in relevant part, that '[i]t shall be an unlawful employment practice for an employer' to take adverse action against an employee because of that employee's 'race, color, religion, sex, or national origin.' " Vill. of Freeport v. Barrella, 814 F.3d 594, 606 (2d Cir. 2016) (quoting 42 U.S.C. § 2000e-2(a)). "The Supreme Court has defined 'national origin' in this context to mean 'the country where a person was born, or, more broadly, the country from which his or her ancestors came.' " Shah v. Wilco Sys., Inc., 76 F. App'x 383, 385 (2d Cir. 2003) (summary order) (quoting Espinoza v. Farah Mfg. Co., 414 U.S. 86, 88 (1973)) (affirming dismissal of Title VII claims where the plaintiff "conceded that her national origin is Indian, even though she is a naturalized American citizen. [The plaintiff] can, therefore, claim only national origin discrimination as an Indian, rather than as an American. Yet she alleges only discrimination against her as an American. Even if we were to look to whether [the defendant] perceived [the plaintiff] as being of American national origin, [the plaintiff] has not alleged that [the defendant] so perceived her.").

In her original complaint, plaintiff did not specify the protected class under which she was seeking to bring her Title VII claim. See generally Compl.; see also Dkt. No. 5 at 22-23. In her amended complaint, plaintiff specifies that she seeks to bring a claim under Title VII "for employment discrimination based on national origin." Am. Compl. at 1, ¶ 1. Plaintiff includes a header in her factual recitation titled, "Malfeasance, Misfeasance and Nonfeasance, Americans with Disability Act (ADA) – Title VII of the Civil Rights Act[.]" Id. at 34. Plaintiff does not, however, state what her national origin is. See generally Am. Compl; see Lee

Milner-Koonce v. Albany City School District, Not Reported in Fed. Supp. (2022)

2022 WL 7351196

v. Sony BMG Music Ent., Inc., 557 F. Supp. 2d 418, 424 (S.D.N.Y. 2008) (dismissing "national origin-based discrimination claims brought under state, local and federal law" because the "[p]laintiff does not plead what her national origin is, so the Court cannot assess whether plaintiff states a claim for national origin discrimination."); Sealy v. State Univ. of N.Y. At Stony Brook, 408 F. Supp. 3d 218, 224-25 (E.D.N.Y. 2019) (dismissing Title VII claim because the "[p]laintiff's [ ] complaint does not even include information identifying his national origin, or the nationality of those [the p]laintiff claims were treated more favorably than him."), aff'd, 834 F. App'x 611 (2d Cir. 2020) (summary order). Further, there are no allegations in plaintiff's amended complaint that indicate that the School District's actions were because of plaintiff's undefined national origin. See generally Am. Compl.; see Lebowitz v. N.Y.C. Dep't of Educ., 407 F. Supp. 3d 158, 176 (E.D.N.Y. 2017) (explaining that the "[p]laintiffs fail to plead any additional facts that would suggest that [the d]efendants placed [took adverse actions] because [a plaintiff] is Russian."). As such, it is recommended that any purported Title VII claim based on national origin be dismissed with prejudice.

### 3. GINA Claim

**\*4** Under GINA, it is "an unlawful employment practice for an employer 'to fail or refuse to hire, or to discharge, any employee, or otherwise to discriminate against any employee with respect to the compensation, terms, conditions, or privileges of employment of the employee, because of genetic information with respect to the employee.' " Welch v. Bio-Reference Lab'ys, Inc., No. 1:19-CV-846 (BKS/DJS), 2019 WL 4805533, at \*2 (N.D.N.Y. Oct. 1, 2019) (quoting 42 U.S.C. § 2000ff-1(a)(1)), report and recommendation adopted, 2019 WL 6134359 (N.D.N.Y. Nov. 19, 2019); see Dkt. No. 5 at 23-24. "Genetic information is defined as 'information about—(i) such individual's genetic tests, (ii) the genetic tests of family members of such individual, and (iii) the manifestation of a disease or disorder in family members of such individual.' " Allen v. Verizon Wireless, No. 3:12-CV-482 (JCH), 2013 WL 2467923, at \*23 (D. Conn. June 6, 2013) (quoting 42 U.S.C. § 2000ff). "To state a claim under GINA, [the p]laintiff must allege '(1) that she was an employee; (2) who was discharged or deprived of employment opportunities; (3) because of information from [the p]laintiff's genetic tests.' " Welch, 2019 WL 4805533, at \*2 (citations omitted).

As to the individual defendants, research has not revealed a case within the Second Circuit that has addressed individual liability under GINA. However, district courts in other circuits have explained that "[b]ecause GINA incorporates the Title VII definition of 'employer,' ... GINA has also been held not to provide for individual liability." Kirkman v. Faurecia Emissions Control Techs., Inc., No. 1:19-CV-00069 (SNLJ), 2020 WL 1275618, at \*4 (E.D. Mo. Mar. 17, 2020) (collecting cases); see also Harrison v. City of Baton Rouge-Par. of E. Baton Rouge, No. 17-CV-487 (JWD/RLB), 2019 WL 1757553, at \*4 (M.D. La. Apr. 3, 2019) (footnote omitted) ("The [c]ourt recommends that all of [the p]laintiff's claims against the individual Directors of the City [d]efendants be dismissed with prejudice as there is no individual liability under any of the remaining federal statutes (GINA, Title VII, and the ADA)."), report and recommendation adopted, 2019 WL 1756534 (M.D. La. Apr. 19, 2019). The undersigned agrees that because GINA adopts Title VII's definition of "employer" and there is no individual liability under Title VII, there is no individual liability under GINA. See 42 U.S.C. § 2000ff(2)(B)(i) ("The term "employer" means--(i) an employer (as defined in section 2000e(b) of this title)"); 42 U.S.C. § 2000e(b) (Title VII's definition of employer). Thus, the undersigned recommends dismissing plaintiff's GINA claim against the individual defendants with prejudice.

Plaintiff contends that "Ms. West was aware of plaintiff's grandson being diagnosed with ADHD, Impulse Disorder, a Learning Disability, Anxiety and Depression (Special needs she stated) she assumed plaintiff as well could possibly be genetically challenged or have 'special needs'." Am. Compl. at 40, ¶ 185. Plaintiff states that Ms. West asked plaintiff is she knew what "intermittent meant. Plaintiff was taken aback and went silent for a brief moment as she was shocked at Ms. West question. Plaintiff felt Ms. West was challenging her intelligence as did Mr. Rivers." Id. at ¶ 186. Plaintiff asserts that "Ms. West also knows plaintiff holds a General Equivalency Diploma instead of a high school diploma. Once again Ms. West played with the knowledge[ ] she possessed to play upon plaintiff[']s[ ] intelligence just as she did when she made [plaintiff] believe she was concerned about her comfortability." Id. at ¶ 187.

"[E]vidence of a family member's disease diagnosis is only considered 'genetic information' if used to determine the likelihood of disease in another individual." Allen, 2013 WL 2467923, at \*23. "It is not considered 'genetic information' if it 'is taken into account only with respect to the individual in which such disease or disorder occurs and not as genetic

Case 5:25-cv-00101-DNH-TWD    Document 7    Filed 03/19/25    Page 22 of 60

Milner-Koonce v. Albany City School District, Not Reported in Fed. Supp. (2022)

2022 WL 7351196

information with respect to any other individual.' " *Id.* (quoting Poore v. Peterbilt of Bristol, LLC, 852 F. Supp. 2d 727, 731 (W.D. Va. 2012) (determining that the plaintiff's "Complaint fails to state a violation of GINA because ... there is no allegation that [the defendant] used [the plaintiff's] wife's diagnosis to forecast the tendency of any other individual to contract multiple sclerosis....")). "For discrimination based on family medical history to violate GINA, the family medical condition must have a genetic predisposition and the employer must have believed that the medical information at issue had a genetic basis." Baum v. Dunmire Prop. Mgmt., Inc., No. 21-CV-00964 (CMA/NYW), 2022 WL 889097, at *7 (D. Colo. Mar. 25, 2022); see also Tedesco v. Pearson Educ., Inc., No. 21-CV-199, 2021 WL 2291148, at *6 (E.D. La. June 4, 2021) (dismissing GINA claim because the plaintiff did not allege that the purported "disease at issue," suicide, "had a genetic cause.").

 **\*5** Plaintiff fails to state a claim for relief under GINA because (1) there is no allegation or indication that plaintiff's grandson's ADHD, learning disability, anxiety, or depression are genetic; (2) there is no support in the Amended Complaint for plaintiff's assertion that Ms. West "assumed plaintiff as well could possibly be genetically challenged"; and (3) there is no allegation that the School District took actions against plaintiff because of genetic information. Am. Compl. at 40, ¶ 185; see also Iwaniszek v. Pride Transp., Inc., No. 2:17-CV-02918 (JCM/BNW), 2021 WL 634991, at *6 (D. Nev. Feb. 17, 2021) ("[The] plaintiff alleges no facts showing that he was discriminated against based on his or his family's genetic tests or diseases that run in his family. He does not explain how any discriminatory conduct is related to his genetic information."). As such, the undersigned recommends dismissing plaintiff's GINA claim against the School District with prejudice.

### 4. ADA Claims against Individual Defendants

The Second Circuit has not explicitly addressed whether there is individual liability under Title I of the ADA. See Sears-Barnett v. Syracuse Cmty. Health Ctr., Inc., 531 F. Supp. 3d 522, 535 (N.D.N.Y. 2021) ("Although the Circuit has been less forthcoming about individual liability under the ADA, at the least it has held that its retaliation provision borrows from Title VII to such an extent that individual liability is also unavailable to retaliation claims.") (citing Spiegel v. Schulmann, 604 F.3d 72, 79 (2d Cir. 2010) (holding that "the retaliation provision of the ADA ... cannot

provide for individual liability")). However, "[b]ased on the Second Circuit's guidance thus far, district courts under its supervision have routinely held that there is no individual liability at all under the ADA[.]" Sears-Barnett, 531 F. Supp. 3d at 535; see also Arcuri v. Schoch, No. 6:15-CV-0798 (DNH/TWD), 2015 WL 5652336, at *5 (N.D.N.Y. Sept. 24, 2015) (collecting cases) ("Although the Second Circuit has yet to explicitly address [the issue], many district courts in this circuit, as well as other circuit courts, have held that individual defendants may not be held personally liable for alleged violations of Title I of the ADA."). As the Second Circuit has not stated otherwise and in line with the district courts concluding as such, the undersigned recommends dismissing the purported ADA claims against the individual defendants as there is no individual liability under the ADA. See Stanford v. N.Y.S. Off. of Child. & Fam. Servs., No. 1:17-CV-1000 (MAD/CFH), 2017 WL 10299121, at *5 (N.D.N.Y. Oct. 24, 2017) ("[I]nsofar as plaintiff seeks to bring ADA claims against the individual defendants, it is recommended that all such claims be dismissed with prejudice."), report and recommendation adopted, 2018 WL 3031844 (N.D.N.Y. June 19, 2018); Gandhi v. NYS Unified Ct. Sys., No. 1:20-CV-120 (LEK/DJS), 2020 WL 1169355, at *3 (N.D.N.Y. Mar. 11, 2020) ("[T]he Court recommends that [the p]laintiff's claim under the ADA against the individual [d]efendants be dismissed because individuals are not subject to liability under Title I of the ADA."), report and recommendation adopted, 2020 WL 2124140 (N.D.N.Y. May 5, 2020).

### 5. FMLA Claim against Individual Defendants

"Section 2615(a)(1) of the FMLA states that '[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.' " Potenza v. City of N.Y., 365 F.3d 165, 167 (2d Cir. 2004) (quoting 29 U.S.C. § 2615(a)(1)).

The regulations promulgated pursuant to the FMLA explain that " '[i]nterfering' with the exercise of an employee's rights would include, for example, not only refusing to authorize FMLA leave, but discouraging an employee from using such leave," and that "[a]n employer is prohibited from discriminating against employees or prospective employees who have used FMLA leave."

 **\*6** Id. (quoting 29 C.F.R. § 825.220(b), (c)) (alterations in original). "An individual may be held liable under the FMLA only if [he or] she is an 'employer,' which is defined as encompassing 'any person who acts, directly or indirectly,

Milner-Koonce v. Albany City School District, Not Reported in Fed. Supp. (2022)

2022 WL 7351196

in the interest of an employer to any of the employees of such employer[.]' " Graziadio v. Culinary Inst. of Am., 817 F.3d 415, 422 (2d Cir. 2016) (quoting 29 U.S.C. § 2611(4)(A)(ii)(I); citing 29 C.F.R. § 825.104(d)). The inquiry is "whether the alleged employer possessed the power to control the worker in question, with an eye to the economic reality presented by the facts of each case." Id. (quoting Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999)). To answer this inquiry, the Court should "consider a nonexclusive and overlapping set of factors intended to encompass the totality of circumstances,": "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Id. (citation omitted). "No one of the four factors standing alone is dispositive ... and any relevant evidence may be examined so as to avoid having the test confined to a narrow legalistic definition." Id. at 422-23 (citation omitted). "In the FMLA context, courts assessing the economic reality of an employment relationship have construed this test as asking essentially whether the putative employer 'controlled in whole or in part [the] plaintiff's rights under the FMLA.' " Id. at 423 (citation omitted).

"Under these principles, individual liability is not limited to those who grant or deny a leave but may extend to those who participate in retaliation for the exercise of FMLA benefits." Ziccarelli v. NYU Hosps. Ctr., No. 15-CV-9307 (JGK), 2021 WL 797668, at *8 (S.D.N.Y. Feb. 27, 2021) (collecting cases) (determining that two defendants were "employers" under the FMLA because one individual "updated" the plaintiff "on the status of his leave" and "the crux of his FMLA interference claim is that because of the defendants' actions, the plaintiff "was compelled to cut his first leave short[ ]" and the two defendants were "involved in [the plaintiff's] review and testified to the meaningful role she played in the reorganization of the [ ] department"; but an individual who had a single act of supervision by "assign[ing the plaintiff] one difficult task and, when he failed to perform, she reported it to" the other two defendants, "and directed them to note this on his record[ ]" was not an "employer"); cf. Sutter v. Dibello, No. 18-CV-817(SJF/AKT), 2021 WL 930459, at *17 (E.D.N.Y. Mar. 10, 2021) (quoting Smith v. Westchester Cnty., 769 F. Supp. 2d 448, 475-76 (S.D.N.Y. 2011) ("Since 'the economic reality test is a factual inquiry that does not bear on the sufficiency of pleadings, ... to survive a motion to dismiss, [the p]laintiff need not allege sufficient facts to satisfy the economic reality test; instead, he must simply

plead that the proposed Individual Defendants had substantial control over the aspects of employment alleged to have been violated.' ")).

#### a. Defendants Adams, McKenna, and Petrin

Ms. Adams is the Superintendent for the School District, Ms. McKenna is the "Assistant Superintendent of Middle School," and Mr. Petrin is the Human Resources Administrator. Am. Compl. at 2, ¶ 3. Plaintiff's allegations concerning Ms. Adams consist solely of her contention that Mr. Rivers stated he was going to submit his "Counseling Memorandum" to Ms. Adams and plaintiff emailed her response to the memorandum, by "CC", to Ms. Adams. Id. at 27, ¶ 109; 28, ¶ 117; 35, ¶ 151. As to Ms. McKenna, Mr. Rivers and plaintiff e-mailed, by "CC", Ms. McKenna concerning the "Counseling Memorandum" and response, and Mr. Rivers stated that he was going to formally submit his memorandum to her. See id. at 27, ¶ 109; 28, ¶ 117. There are no other factual allegations concerning either individual that indicates that they had any control over plaintiff's leave requests, work duties, pay, or transfer. See generally Am. Compl. As such, it is recommended that plaintiff's FMLA claims against individual defendants Adams and McKenna be dismissed without prejudice.

As to Mr. Petrin, in November 2020, plaintiff complained to Ms. West that she received medical leave information to her e-mail and stated that she was only supported to receive that information via U.S Postal mail. See Am. Compl. at 11, ¶ 44. Plaintiff e-mailed her complaint to Mr. Petrin, via "CC". See id. Plaintiff also states that on January 22, 2021, she spoke to Mr. Rivers about whether her increase in job responsibilities was accompanied with a pay raise, and he stated that it "was an HR issue[.]" Id. at 9-10, ¶ 39. In her e-mailed response to Mr. Rivers' "Counseling Memorandum," on April 5, 2021, plaintiff recited her recollection from the January meeting: Mr. Rivers told plaintiff to reach out to Mr. Petrin if she wanted to discuss a raise and she advised Mr. Rivers that she would reach out to Mr. Petrin. Id. at 27, ¶ 109; 31, ¶ 132. Mr. Rivers and plaintiff also e-mailed, via "CC", Mr. Petrin their respective "Counseling Memorandum" and response. See id. at 27, ¶ 109; 34, ¶ 151. Mr. Rivers also stated that he was going to submit the memorandum to Mr. Petrin. See id. at 28, ¶ 117.

**\*7** Plaintiff has not alleged that Mr. Petrin had any control over the aspects of her employment that she contends were violated such as her pay, work responsibilities, requests for

Milner-Koonce v. Albany City School District, Not Reported in Fed. Supp. (2022)

2022 WL 7351196

medical leave, or transfer. See generally Am. Compl.; see also Sutter, 2021 WL 930459, at *17. As such, the undersigned recommends dismissing the purported FMLA claim against individual defendant Petrin without prejudice.

### b. Defendants West and Rivers

As to individual defendants West and Rivers, plaintiff has sufficiently plead their control over her conditions of employment such that the undersigned recommends allowing the FMLA claim against them to proceed. Plaintiff states that Ms. West is the Human Resource Assistant Administrator and Mr. Rivers is the Stephen and Myers Middle School Principal. See Am. Compl. at 2, ¶ 3. Plaintiff alleges that Ms. West communicated when plaintiff's leave requests were granted or denied; "provided plaintiff with a lecture, performance expectations and then proceeded to inform plaintiff of her being paid" for specific days; sent to plaintiff a list of work expectations; informed plaintiff when her leave had run out and that she was not allowed to take leave intermittently; and discussed plaintiff's transfer possibilities. Id. at 11, ¶¶ 42-44, 46; 13, ¶ 52; 17-18, ¶¶ 74-75; 36-37; ¶¶ 159-64. As to Mr. Rivers, plaintiff contends that he signed her out of the online time management system for a workday; he provided her lists of job expectations; he informed her of when she was out of available medical leave; and he told her that all concerns regarding medical leave and requests to leave work early should go through him and the administration. See id. at 12, ¶ 48; 16, ¶ 67, 26, ¶ 107; 28, ¶ 116. At this early stage, the undersigned concludes that these allegations are sufficient to establish individual liability and recommends allowing the FMLA claim to proceed against defendants West and Rivers.

### 6. NYCHRL Claims

New York City Human Rights Law makes it "an unlawful discriminatory practice [ ] [f]or an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, caregiver status, sexual and reproductive health decisions, sexual orientation, uniformed service or immigration or citizenship status of any person" "[t]o refuse to hire or employ or to bar or to discharge from employment such person" or "[t]o discriminate against such person in compensation or in terms, conditions or privileges of employment." N.Y.C., N.Y., Code § 8-107(a)(2)-(3). "To state a claim under the NYCHRL, the [p]laintiff must allege

that the [d]efendant discriminated against her 'within the boundaries of New York City'." Robles v. Cox & Co., 841 F. Supp. 2d 615, 623 (E.D.N.Y. 2012) (quoting Shah v. Wilco Sys., Inc., 806 N.Y.S.2d 553, 558 (1st Dep't 2005)) (citing Fried v. LVI Servs., Inc., No. 10-CV-9308, 2011 WL 4633985, at *12 (S.D.N.Y. Oct. 4, 2011) ("The NYCHRL expressly limits the applicability of its protections to acts that occur within the boundaries of New York City.")). "[T]o determine the location of the discrimination under the NYCHRL, courts look to the location of the impact of the offensive conduct." Curto v. Med. World Commc'ns, Inc., 388 F. Supp. 2d 101, 109 (E.D.N.Y. 2005); see also Kraiem v. JonesTrading Institutional Servs. LLC, 492 F. Supp. 3d 184, 200 (S.D.N.Y. 2020) (citation and quotation marks omitted) (dismissing NYCHRL claims where the alleged conduct did not occur "among those who work in the city.").

**\*8** There are no allegations in plaintiff's amended complaint concerning New York City. See generally Am. Compl. As such, the undersigned recommends dismissing plaintiff's purported NYCHRL claims with prejudice.

### 7. Supplemental Jurisdiction Over the NYSHRL Claims

"[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a); see Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373 F.3d 296, 308 (2d Cir. 2004) (citation and quotation marks omitted) ("A state law claim forms part of the same controversy if it and the federal claim derive from a common nucleus of operative fact."). A court "may decline to exercise supplemental jurisdiction over a claim" if "the claim raises a novel or complex issue of State law," "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction," "the district court has dismissed all claims over which it has original jurisdiction," "or [ ] in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). "When deciding whether to exercise supplemental jurisdiction over a claim, a district court should 'consider and weigh ... the values of judicial economy, convenience, fairness, and comity.' " Langella v. Mahopac Cent. Sch. Dist., No. 18-CV-10023 (NSR), 2020 WL 2836760, at *14 (S.D.N.Y. May 31, 2020)

Case 5:25-cv-00101-DNH-TWD    Document 7    Filed 03/19/25    Page 25 of 60
Milner-Koonce v. Albany City School District, Not Reported in Fed. Supp. (2022)
2022 WL 7351196

(quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).

Plaintiff's NYSHRL claims arise from the same set of facts as her ADA and FMLA claims. See generally Am. Compl. Judicial economy, convenience, fairness, and comity weigh in favor of the Court exercising supplemental jurisdiction as plaintiff's FMLA, ADA, and NYSHRL claims apply similar, if not identical, standards. See *Langella*, 2020 WL 2836760, at \*14 ("As it relates to [the p]laintiff's NYSHRL claims, the standards between the ADA, ADEA, RA, and NYSHRL are virtually identical (as discussed below) and would be applied to the same set of facts. Moreover, because the standards are identical, deciding the NYSHRL claims would not require an investment of additional judicial resources, and there would be no comity issues triggered.") (citing *Oliver v. N.Y.S. Police*, No. 1:19-CV-233 (BKS/DJS), 2020 WL 1849484, at \*10 (N.D.N.Y. Apr. 13, 2020) ("However, where, as here, the 'standards of liability are identical under [federal law] and the NYSHRL[,] deciding the state-law claims does not require the investment of additional judicial resources,' and there is no 'substantial comity concern raised by this Court's application of state law with which courts in this District are eminently familiar,' the Court concludes 'the values of judicial economy, convenience, fairness, and comity,' support the exercise of supplemental jurisdiction over [the p]laintiff's NYSHRL claims.")). The undersigned is recommending that plaintiff's ADA and FMLA claims be permitted to proceed; thus, the undersigned also recommends that the Court exercise supplemental jurisdiction over the NYSHRL claims that are sufficient to survive initial review.

**8. ADA and NYSHRL Claims against the School District**

**a. Discrimination**

\*9 "New York State disability discrimination claims are governed by the same legal standards as federal ADA claims." *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 117 n.1 (2d Cir. 2004). Thus, the undersigned will address the claims in tandem. See, e.g., *Novick v. Vill. of Wappingers Falls, N.Y.*, 376 F. Supp. 3d 318, 341-42 (S.D.N.Y. 2019). Plaintiff states that defendants "[d]id not accommodate my disability[,]" "[p]rovided me with terms and conditions of employment different from those of similar employees[,]" and "[h]arassed me or created a hostile work environment[.]" Am. Compl. at 2, ¶ 5.

**b. Unequal Terms and Conditions of Employment**

"To establish a prima facie case of discrimination based upon unequal terms and conditions of employment, a plaintiff must show that:" "'(a) the employer is subject to the ADA; (b) she suffers from a disability within the meaning of the ADA; (c) there was an inference of discrimination; and (d) she suffered a materially adverse change in the terms or conditions of her employment." *Johnson v. City of N.Y.* 326 F. Supp. 2d 364, 368 (E.D.N.Y. 2004). "To be materially adverse[,] a change in working conditions must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (quoting *Crady v. Liberty Nat'l Bank and Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993)), abrogated on other grounds as recognized in *Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 43-44 (2d Cir. 2019). "'A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation.'" Id. (quoting *Crady*, 993 F.2d at 136).

"Increased responsibilities and excessive scrutiny, without more, do not constitute an adverse employment action." *Workneh v. Pall Corp.*, 897 F. Supp. 2d 121, 135 (E.D.N.Y. 2012) (citing *Dauer v. Verizon Commc'ns Inc.*, 613 F. Supp. 2d 446, 461 (S.D.N.Y. 2009) (observing that "[c]ourts in this circuit have found that reprimands ... and excessive scrutiny do not constitute adverse employment actions in the absence of other negative results such as a decrease in pay or being placed on probation")). "Although reprimands and close monitoring may cause an employee embarrassment or anxiety, such intangible consequences are not materially adverse alterations of employment conditions." *Hall v. N.Y.C. DOT*, 701 F. Supp. 2d 318, 336 (E.D.N.Y. 2010) (internal quotations and citation omitted).

Further, "an involuntary transfer may constitute an adverse employment action if the plaintiff 'show[s] that the transfer created a materially significant disadvantage' with respect to the terms of her employment." *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 128 (2d Cir. 2004) (citation omitted). However, "[i]f a transfer is truly lateral and involves no significant changes in an employee's conditions of employment, the fact that the employee views the transfer either positively or negatively does not of itself render the

Milner-Koonce v. Albany City School District, Not Reported in Fed. Supp. (2022)

2022 WL 7351196

denial or receipt of the transfer [an] adverse employment action[.]" Id. (citation omitted). "[T]he Second Circuit has held that an inference of discrimination may be drawn either from (1) direct evidence of discriminatory intent, or (2) a showing by the plaintiff that [she] was subjected to disparate treatment ... [compared to persons] similarly situated in all material respects to ... [herself]." Fox v. State Univ. of N.Y., 686 F. Supp. 2d 225, 230 (E.D.N.Y. 2010) (quoting Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000)).

*10 Plaintiff's amended complaint alleges a claim for unequal terms and conditions of employment sufficient to survive initial review. See generally Am. Compl. Plaintiff alleges that she has multiple impairments—anxiety, depression, blood clotting disorder, and injuries to her neck, low back, left shoulder, hips, and knees—that impact her ability to walk, run, jump, sit, stand, concentrate, and remain calm. See Am. Compl. at 4-7, ¶¶ 9-26. Her allegations are sufficient to establish a disability under the ADA. See Woolf v. Strada, 949 F.3d 89, 93 (2d Cir. 2020) (per curiam) (footnote omitted) ("The ADA defines 'disability' to include, among other things, 'a physical or mental impairment' that substantially limits one or more major life activities.' "). Plaintiff's contends that because of plaintiff's use of medical leave and leaving work early because of pain from her disabilities, she was denied intermittent leave, signed out of work by Mr. Rivers, was not paid for her increase in job responsibilities, was required to submit a daily list of the job assignments she completed, her desk was relocated, her belongings were moved, her name was removed from her mailbox, and she was eventually forced to transfer job locations and work different hours. See id. at 9-10, ¶¶ 38-39, 12, ¶ 48; 15, ¶¶ 61-63; 18, ¶ 73; 25, ¶ 102. Plaintiff asserts that Mr. Rivers threatened her job both in the March 24, 2021, meeting and in the Counseling Memorandum. See Am. Compl. at 26, ¶ 106; 28, ¶¶ 116-17. Plaintiff also asserts that she was transferred from Myers Middle School to "NSES" and "Thomas Obrien Academy of Science and Technology aka Toast." Am. Compl. at 37, ¶ 160. Plaintiff asserts that she needed a ten-month position instead of a twelve-month position to care for her grandson over the summer and the only ten-month positions were "NSES" and Delaware Elementary School. Id. At this early stage, this is sufficient to allege a materially adverse change to the conditions and terms of her employment.

Plaintiff does not allege direct discrimination—that anyone ever made inappropriate comments concerning a disability. See generally Am. Compl. However, plaintiff alleges that she was treated differently, supervised, scrutinized, her job was threatened, and she was transferred because of her use of medical leave. See Chisholm v. Stryker, No. 22-CV-2705 (JMA/SIL), 2022 WL 3647288, at *3 (E.D.N.Y. Aug. 24, 2022) (collecting cases) ("Courts in this Circuit have routinely dismissed discrimination claims where the plaintiff's allegations ... fail to suggest discriminatory intent."). But see Morris v. City of N.Y., 153 F. Supp. 2d 494, 504 (S.D.N.Y. 2001) ("Given [the] defendants' overt references to [the] plaintiff's sick record, evidence of [the] defendants' knowledge that [the] plaintiff's sick days were closely related to his disability, the fact that one of [the] plaintiff's two disciplinary charges was more than eight years old at the time of the promotion decision, and the record as a whole, a jury might reasonably infer that [the] defendants' decision not to promote [the] plaintiff was motivated, at least in part, by discrimination on the basis of a record of disability."). As this early stage, this is sufficient to state a claim for disability discrimination. Thus, it is recommended that the claim be permitted to proceed.

### c. Failure to Accommodate

Under the ADA and NYSHRL, to establish a failure to accommodate claim, plaintiff

> must show that: "(1) [s]he is a person with a disability under the meaning of the ADA [or the NYSHRL]; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, the employee could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations."

Berger v. N.Y.C. Police Dep't, 304 F. Supp. 3d 360, 368-69 (S.D.N.Y. 2018) (quoting Noll v. Int'l Bus. Machs. Corp., 787 F.3d 89, 94 (2d Cir. 2015)).

Plaintiff's amended complaint has alleged a failure to accommodate claim sufficient to survive initial review. Plaintiff sufficiently alleges a disability. See supra at 22. The School District had notice of plaintiff's requests for leave as alleged through her use of medical leave and the School District "direct[ing], request[ing], and pa[ying] for" two independent medical examinations of plaintiff. Am. Compl. at 5, ¶ 21; 7, ¶ 25. Plaintiff asserts that she sought a reasonable accommodation through her requests for "intermittent leave" to attend physical therapy. Id. at 13-14, ¶ 55; see Vangas v. Montefiore Med. Ctr., 6 F. Supp. 3d 400, 414 (S.D.N.Y. 2014) ("[A] reasonable allowance of time for medical leave

2022 WL 7351196

may, in appropriate circumstances, constitute a reasonable accommodation....”). Plaintiff alleges that she was informed that “the requested leave could not be taken intermittently.” Am. Compl. at 13, ¶ 54. This is sufficient to state a claim for failure to accommodate but the undersigned makes no determination as to the success of the claim on the merits.

### d. Hostile Work Environment

**\*11**  “To prevail on a hostile work environment claim, [the plaintiff] must show ‘(1) that the harassment was ‘sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment,’ and (2) that a specific basis exists for imputing the objectionable conduct to the employer.” Fox v. Costco Wholesale Corp., 918 F.3d 65, 74 (2d Cir. 2019) (quoting Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002)). “A plaintiff alleging a hostile work environment claim under the ADA [ ] ‘must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment.’ ” Id. (quoting Alfano, 294 F.3d at 373). The Court should “look to the totality of the circumstances to determine whether a plaintiff has met this burden, including proof of ‘the frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with [the plaintiff’s] work performance.’ ” Id. (alterations in original) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)).

Where ... a co-worker, as opposed to a supervisor or manager, harasses the plaintiff, the “employer is directly liable for [the] employee's unlawful harassment if the employer was negligent with respect to the offensive behavior [,]” Vance v. Ball State Univ., 570 U.S. 421, 427 (2013), i.e., “if the employer failed to provide a reasonable avenue for complaint or failed to take appropriate remedial action” about harassment of which it knew, or in the exercise of reasonable care should have known. Summa v. Hofstra Univ., 708 F.3d 115, 124 (2d Cir. 2013) (quotations and citation omitted).

Haggod v. Rubin & Rothman, LLC, No. 14-CV-34L (SJF/AKT), 2014 WL 6473527, at \*21 (E.D.N.Y. Nov. 17, 2014) (internal citation omitted). “Evidence that an employer did not monitor the workplace, failed to respond to complaints, failed to provide a system for registering complaints, or effectively

discouraged complaints from being filed would be relevant.” Id. (citation omitted).

To state hostile work environment claim under the ADA, “[t]he plaintiff must also allege facts suggesting that the harassing conduct was motivated by animus directed at his disability.” Hendrix v. Pactiv LLC, 488 F. Supp. 3d 43, 53 (W.D.N.Y. 2020) (quoting Zako v. Encompass Digital Media, Inc., No. 19-CV-844, 2020 WL 3542323, at \*13 (D. Conn. June 30, 2020)); see also Sosa v. N.Y.C. Dep't of Educ., 368 F. Supp. 3d 489, 525 (E.D.N.Y. 2019) (“The problems with [the plaintiff's complaint] ... imperil her disability hostile work environment claim. [The plaintiff] has failed to allege that the abusive incidents were because of any disability that she had. This claim, therefore, must be dismissed.”); Gonzalez v. City of N.Y., 377 F. Supp. 3d 273, 298 (S.D.N.Y. 2019) (“[T]he conduct that [the plaintiff] alleges in support of his hostile work environment claim—whether considered in isolation or in the aggregate—does not meet the requisite standard. According to the complaint, [the defendant] failed to grant [the plaintiff's] leave and sent him e-mails frequently.... That [the plaintiff] got emails from his boss and did not get all of the leave he requested do not suggest the kind of trauma against which a hostile work environment claim guards.”).

At this early stage, plaintiff has alleged facts concerning a hostile work environment sufficient to survive initial review. Plaintiff contends that Ms. Kristy Koldis asked plaintiff to do work that plaintiff was not supposed to do and “ridiculed plaintiff for not moving fast enough.” Am. Compl. at 25, ¶100. She asserts that Mr. Rivers did not intervene upon receipt of Ms. Koldis' e-mails to plaintiff. See id. at ¶ 101. There are no allegations that Ms. Koldis' actions had any relation to plaintiff's disabilities. However, plaintiff also alleges that she was not permitted to take intermittent leave; when she returned from one stint of medical leave, her desk was changed, her belongings were missing, and her name was taken off of her mailbox; plaintiff was required to e-mail a list of the tasks she accomplished in a workday; plaintiff was sent lists of tasks to accomplish; plaintiff was required to fill out Covid-19 forms through her e-mail and told she could not complete a written form; Mr. Rivers “accused [plaintiff] of abusing time”; plaintiff would call the office and no one would answer or the phone would ring for a long time before anyone would answer; Mr. Rivers complained of plaintiff's time usage in the “Counseling Memorandum” that was sent to other individuals; and Mr. Rivers stated that plaintiff “created a ‘constant disruptive, uncomfortable, and inefficient work environment.’ ” Id. at 13-14, ¶¶ 55-56, 14-15, ¶¶ 57-63, 18,

Case 5:25-cv-00101-DNH-TWD    Document 7    Filed 03/19/25    Page 28 of 60

Milner-Koonce v. Albany City School District, Not Reported in Fed. Supp. (2022)

2022 WL 7351196

¶ 73; 19, ¶ 82; 21, ¶ 87-88; 25, ¶ 102-103; 26, ¶ 107; 27, ¶ 110, 113.

**\*12**  These allegations are sufficient for purposes of initial screening to state a hostile work environment claim based on plaintiff's disability; thus, the undersigned recommends that the claim be permitted to proceed. However, the undersigned makes no determination as to whether the claim would survive a properly supported dispositive motion.

### 9. New York State Human Rights Law Claims

#### a. Harassment against the School District

The NYSHRL prohibits an employer from "subject[ing] any individual to harassment because of an individual's [ ] race, creed, color, national origin, ... disability, [or] predisposing genetic characteristics, ... regardless of whether such harassment would be considered severe or pervasive under precedent applied to harassment claims." N.Y. Exec. Law § 296(1)(h). "Such harassment is an unlawful discriminatory practice when it subjects an individual to inferior terms, conditions or privileges of employment because of the individual's membership in one or more of these protected categories.... Nothing in this section shall imply that an employee must demonstrate the existence of an individual to whom the employee's treatment must be compared." Id.

Under this "more liberal standard" for hostile work environment claims, plaintiff has alleged sufficient information to survive initial review. Weekes v. JetBlue Airways Corp., No. 21-CV-1965 (MKB), 2022 WL 4291371, at \*13 (E.D.N.Y. Sept. 16, 2022) (concluding that the plaintiff sufficiently alleged a hostile work environment claim under the NYSHRL where he "alleges[d] that [the d]efendants 'creat[ed] a hostile work environment' because of his requests for accommodation for his disability and that [the defendants], among others, treated him less well by ignoring his complaints and requests for accommodation."). As such, the undersigned recommends allowing plaintiff's hostile work environment claim under the NYSHRL to proceed.

#### b. Retaliation against the School District

Retaliation claims under the NYSHRL are governed by the same standard as ADA retaliation claims. See Cornetta v.

Town of Highlands, 434 F. Supp.3d 171, 185 (S.D.N.Y. 2020) (citations and quotation marks omitted) (citations omitted) ("The ADA prohibits employers from discriminat[ing] against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter. The NYSHRL contains a similar provision against retaliation, and is governed by the same standard[.]"). Therefore, for the same reasons stated in the undersigned's May 12, 2022, Report-Recommendation and Order, which ordered plaintiff's ADA retaliation claim to proceed, the undersigned recommends that plaintiff's NYSHRL retaliation claim against the School District be permitted to proceed. See Dkt. No. 5 at 19-20; see also Brizzi v. Utica Mut. Ins. Co., 529 F. Supp. 3d 44, 56-57 (E.D.N.Y. 2021) (affirming and dismissing certain NYSHRL claims based on the court's determination concerning the parallel ADA claims).

#### c. Individual Defendants Discrimination, Hostile Work Environment, and Retaliation

Unlike the ADA, "[t]he NYSHRL provides for personal liability as long as the conduct that gave rise to the claim involved direct participation from the individual defendant." Malcolm v. Rochester City Sch. Dist., 388 F. Supp. 257, 263 (W.D.N.Y. 2019), aff'd, 828 F. App'x 810 (2d Cir. 2020) (summary order). "Under the NYSHRL, an individual can be liable where the defendant (i) is considered an 'employer,' or (ii) aided and abetted the unlawful discriminatory acts of others[.]" Livingston v. City of N.Y., 563 F. Supp. 3d 201, 256 (S.D.N.Y. 2021) (quoting N.Y. Exec. Law § 296(6)). "An individual defendant may be liable as an 'employer' under the NYSHRL 'when that individual has an ownership interest in the relevant organization or the power to do more than carry out personnel decisions made by others,' i.e., the power to hire or fire." Id. (quoting Townsend v. Benjamin Enters., Inc., 679 F.3d 41, 57 (2d Cir. 2012)). "As to [a] discrimination claim, '[a] supervisor's failure to take adequate remedial measures' in response to a complaint of discrimination has been deemed 'actual participation' under NYSHRL § 296(6)." Imperato v. Otsego Cnty. Sheriff's Dep't, No. 3:13-CV-1594 (BKS/DEP), 2016 WL 1466545, at \*28 (N.D.N.Y. Apr. 14, 2016) (quoting Parra v. City of White Plains, 48 F. Supp. 3d 542, 555 (S.D.N.Y. 2014)).

Case 5:25-cv-00101-DNH-TWD    Document 7    Filed 03/19/25    Page 29 of 60

Milner-Koonce v. Albany City School District, Not Reported in Fed. Supp. (2022)

2022 WL 7351196

**\*13** Under a theory of aiding and abetting, "it is unlawful 'for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under [the NYSHRL], or to attempt to do so.' " Livingston, 563 F. Supp. 3d at 256 (quoting N.Y. Exec. Law § 296(6)). "The Second Circuit has held that 'this language allow[s] a co-worker who actually participates in the conduct giving rise to a discrimination claim to be held liable under the NYSHRL even though that co-worker lacked the authority to either hire or fire the plaintiff.' " Id. (alteration in original) (quoting Feingold v. N.Y., 366 F.3d 138, 158 (2d Cir. 2004)). "[A] plaintiff may succeed in a claim under the NYSHRL by showing the employer entity's having encouraged, condoned, or approved the discriminatory conduct of a sole employee—the same discriminatory conduct which then, perhaps 'circular[ly]', proves individual liability under the aiding and abetting provision of Section 296(6)." Johnson v. Cnty. of Nassau, 82 F. Supp. 3d 533, 536 (E.D.N.Y. 2015); see Tully-Boone v. N. Shore-Long Island Jewish Hosp. Sys., 588 F. Supp. 2d 419, 426-27 (E.D.N.Y. 2008) (acknowledging that this theory of liability "creates a strange and confusing circularity where the person who has directly perpetrated the [unlawful discrimination] only becomes liable through the employer whose liability in turn hinges on the conduct of the direct perpetrator").

### i. Defendants Adams, McKenna, and Petrin

There are no allegations in plaintiff's amended complaint concerning Ms. Adams, Ms. McKenna, or Mr. Petrin having the authority to hire or fire plaintiff, participating in the discriminatory or retaliatory conduct, or failing to take adequate remedial measures. See generally Am. Compl. Plaintiff asserts that they were each aware of defendant Rivers' "Counseling Memorandum" and plaintiff's response, but this is insufficient to allege that they participated in the conduct or failed to act on it. See id. at 27, ¶ 109; 35, ¶ 151. Plaintiff also contends that in her " 'Agreement' between Albany Public School United Employees and the Albany Public School District Dated July 1, 2015 – June 30, 2020" and "July 1, 2020 – June 30, 2024" " '[a]ny member who is being considered for a transfer initiated by the District may request an appointment with the Superintendent, or his/her designee, to discuss the matter prior to a final determination.' Plaintiff was never afforded this opportunity as the contract/agreement states she was entitled to." Id. at 36, ¶¶ 157-58. Plaintiff does not allege that the agreement gave Ms. Adams, the superintendent, any authority over plaintiff's

transfer or that she was required, but failed, to intervene in the allegedly discriminatory or retaliatory conduct. See generally Am. Compl. As the amended complaint does not allege that Ms. Adams, Ms. McKenna, or Mr. Petrin had the authority to hire or fire plaintiff, directly participated in the allegedly discriminatory or retaliatory conduct, or that they had the authority to intervene and failed to do so, it is recommended that the NYSHRL claims against them be dismissed without prejudice.

### ii. West and Rivers

Plaintiff does not allege that either Ms. West or Mr. Rivers had the authority to hire or fire plaintiff. See generally Am. Compl. As such, it is unlikely that they could be held directly liable under the NYSHRL. See Schaper v. Bronx Lebanon Hosp. Ctr., 408 F. Supp. 3d 379, 395 (S.D.N.Y. 2019) (explaining that "[a]lthough [the d]efendant [ ] was [the p]laintiff's direct supervisor, her title is not sufficient to impose individual liability under the NYSHRL.... [The defendant] did not have the authority to hire or fire employees. Instead, she simply could make hiring and firing recommendations."). However, plaintiff has sufficiently alleged Ms. West's and Mr. River's participation in the conduct that gives rise to plaintiff's discrimination and retaliation claims. See Williams v. PMA Companies, Inc., (citation omitted) 564 F. Supp. 3d 32, 57 (N.D.N.Y. 2021) ("[A] coworker who 'lacks the authority to either hire or fire the plaintiff may still be held liable as an aider-abettor under NYSHRL § 296(6) if he actually participates in the conduct giving rise to a discrimination claim.' "). As such, the undersigned recommends permitting the NYSHRL claims to proceed against individual defendants Rivers and West. The undersigned makes no determination as to the merits of the claims.

### III. Leave to Amend

**\*14** "A *pro se* complaint should not be dismissed 'without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.' " Bennett v. Mnuchin, No. 6:20-CV-243 (BKS/TWD), 2020 WL 1674068, at \*1 (N.D.N.Y. Apr. 6, 2020) (quoting Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2d Cir. 1999)), report and recommendation adopted, 2020 WL 3046046 (N.D.N.Y. June 8, 2020), reconsideration denied, 2020 WL 4432662 (N.D.N.Y. July 31,

Milner-Koonce v. Albany City School District, Not Reported in Fed. Supp. (2022)

2022 WL 7351196

2020). "[G]ranting a *pro se* plaintiff an opportunity to amend is not required where the plaintiff has already been given a chance to amend h[er] pleading. Moreover, an opportunity to amend should be denied where 'the problem ... is substantive such that [b]etter pleading will not cure it.' " Abascal v. Hilton, No. 9:04-CV-1401(LEK/GHL), 2008 WL 268366, at *8 (N.D.N.Y. Jan. 30, 2008) (footnotes and quotation marks omitted), aff'd sub nom. Abascal v. Jarkos, 357 F. App'x 388 (2d Cir. 2009) (summary order).

Plaintiff was afforded an opportunity to amend her original complaint. See Dkt. No. 9 at 12. Plaintiff names new defendants in her amended complaint and raises new state law claims. See Am. Compl. at 1-2. Affording plaintiff the "special solicitude" that is given to pro se plaintiff's, the undersigned recommends providing plaintiff an opportunity to amend her amended complaint as it relates to her FMLA and NYSHRL claims against individual defendants Adams, McKenna, and Petrin. However, as to her NYCHRL claims, plaintiff did not include in her original or amended complaints any allegations that relate, or even suggest a relation, to New York City. See generally Compl.; Am. Compl. As such, the undersigned recommends denying leave to amend any purported NYCHRL claims. Additionally, as to her Title VII and GINA claims against the School District, plaintiff was afforded an opportunity to amend her complaint and she has failed to plead facts that plausibly allege a violation of either statute. Thus, it is recommended that she not be afforded an additional opportunity to amend.

Should the District Judge adopt this Report-Recommendation and Order, plaintiff is advised that any second amended complaint will supersede and replace the amended complaint in its entirety. Plaintiff is not permitted to incorporate by reference any portion of earlier complaints and may not attempt to replead claims that have already been dismissed by this Court with prejudice. Any claims that are not replead that were dismissed by this Court will be deemed abandoned.

### IV. Conclusion

**WHEREFORE**, for the reasons set forth herein, it is hereby

**RECOMMENDED,** that the plaintiff's ADA claims against the individual defendants and Title VII, GINA, and NYCHRL claims against the School District and individual defendants be **DISMISSED with prejudice and without leave to amend**; and it is further

**RECOMMENDED**, that plaintiff's claims against individual defendants Kaweeda Adams, Lori McKenna, and Matthew Petrin be **DISMISSED without prejudice and with leave to amend**; and it is further

**RECOMMENDED**, that all other claims be **PERMITTED TO PROCEED**; [4] and it is further

[4]     Pursuant to the undersigned's May 12, 2022, Report-Recommendation and Order and Judge Kahn's June 29, 2022, Memorandum-Decision and Order, plaintiff's ADA retaliation claim and FMLA claim against the School District were ordered to proceed. See Dkt. Nos. 5, 9.

**ORDERED**, that the Clerk of Court not issue service of the amended complaint; and it is further

**RECOMMENDED**, that should the District Judge adopt this Report-Recommendation and Order, plaintiff be given thirty (30) days from the date of the Order adopting this Report-Recommendation and Order to file a second amended complaint, and if plaintiff does not file a second amended complaint, (1) it will be deemed as an abandonment of any claims for which leave to replead has been granted and will result in dismissal of the claims without further order by the Court, and (2) the matter be returned to the Magistrate Judge for service of the amended complaint for any claims that were permitted to proceed in the amended complaint; and it is further

 **\*15 ORDERED**, that the Clerk of Court reinstate Albany City School District as a defendant on the docket; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human

2022 WL 7351196

Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a). [5]

[5]     If you are proceeding pro se and are served with this Report-Recommendation & Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. FED R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(c).

**All Citations**

Not Reported in Fed. Supp., 2022 WL 7351196

---

End of Document

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Chisholm v. Stryker, Not Reported in Fed. Supp. (2022)

2022 WL 3647288

Case 5:25-cv-00101-DNH-TWD    Document 7    Filed 03/19/25    Page 32 of 60

2022 WL 3647288
Only the Westlaw citation is currently available.
For Online Publication Only
United States District Court, E.D. New York.

Thomas J. CHISHOLM, II, Plaintiff,
v.
Patrick STRYKER, et al., Defendants.

22-CV-2705 (JMA) (SIL)
|
Signed August 24, 2022

**Attorneys and Law Firms**

Thomas J. Chisholm, II, West Babylon, NY, Pro Se.

**MEMORANDUM & ORDER**

AZRACK, United States District Judge:

**\*1** Before the Court is the renewed in forma pauperis application filed by Thomas J. Chisholm, II ("Plaintiff") pursuant to the Court's July 12, 2022 Order. (ECF Nos. 9-10.) Upon review, the Court finds that Plaintiff's reported financial position qualifies him to proceed with this action without prepayment of the filing fee. Accordingly, the Court grants Plaintiff's renewed in forma pauperis application. However, for the reasons that follow, the Court finds that Plaintiff has not set forth a plausible claim for relief. Accordingly, the amended complaint is dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii).

**I. Background**

**A. Relevant Procedural History**
Plaintiff's amended complaint names Patrick Stryker, as CEO of A.B.C. Employment Agency ("Stryker"), the A.B.C. Employment Agency ("the Agency"), and Woodcrest Estates ("Woodcrest" and collectively, "Defendants") as Defendants and is submitted on the Court's complaint form for employment discrimination claims with an additional nine-typed pages and includes a copy of the Determination and Notice of Rights from the U.S. Equal Employment Opportunity Commission ("EEOC"). (ECF No. 7.) Plaintiff checked the box on the form to allege that his claims are brought pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII")

as well as other unspecified federal, state, and city or county laws. (Id. at ¶ II.) Plaintiff also checked the boxes on the form to allege that, during the period from September 27, 2020 to September 29, 2020, his employment was terminated, he suffered unequal terms and conditions of his employment, and that the Defendants retaliated against him on account of his race and color, which Plaintiff alleges is African-American. (Id. ¶¶ III.) According to the amended complaint, Plaintiff filed a charge with the EEOC on or about December 21, 2020 and he received a Notice of Right to Sue on February 14, 2022. (Id. ¶ IV and at 17-18.)

**B. The Amended Complaint** [1]

[1]     The following facts are taken from the amended complaint and are presumed to be true for the purposes of this Memorandum and Order.

This action arises from the termination of Plaintiff's temporary job placement as a Maintenance Mechanic at Woodcrest. (Id. at 8 and in toto.) According to the amended complaint, Stryker, as "C.E.O./President" of the Agency, phoned Plaintiff on September 3, 2020 and offered him the position and explained that the temporary position could become permanent if Plaintiff "worked hard, arrived on time and was capable of the assignments." (Id. at 8, 13.) Plaintiff alleges that he "performed a stellar job every day", was "early every single day and approach[ed] each assignment with pride and respect for my co-workers and important residents who lived [at Woodcrest]. (Id. at 9, 14.) Plaintiff alleges that in the short time he was employed, he had "befriended" a few unidentified residents who Plaintiff claims expressed "surprise[ ] that a Black man was even hired at Woodcrest and to be very careful because they believed Woodcrest staff was partial to such or it seems so." (Id.)

**\*2** Approximately three weeks into Plaintiff placement at Woodcrest, on or about September 27, 2020, Plaintiff was assigned to accompany the on-site superintendent "Raul" to change out a refrigerator from an apartment unit. (Id.) When Plaintiff and Raul arrived with the new refrigerator at the door of the apartment, there was a "Red Dot" which Plaintiff alleges was a signal for "no entry" while the occupant was not at home. (Id.) After no one answered the doorbell, Plaintiff claims he suggested to Raul that they not enter and return when the resident was at home. According to the amended complaint, Raul insisted that they enter and complete the task since Raul had the key. (Id.) Once inside, Plaintiff describes that Raul removed the contents from the old refrigerator and placed them in the sink and on the counters causing other

Chisholm v. Stryker, Not Reported in Fed. Supp. (2022)

2022 WL 3647288

items such as pictures, calendars, and other papers to be "strewn about." (Id.) The old refrigerator was dismantled and removed and the new one was installed at which time Plaintiff and Raul left. (Id.)

Shortly thereafter, the resident of that unit "flagged" Plaintiff and Raul down, yelled and cursed at them, and questioned why they had entered her apartment without permission. (Id. at 10.) She further complained that the doors of the new refrigerator were installed incorrectly and that a "crystal figurine that her deceased husband collected and left to her [was] suddenly missing." (Id.) The resident then contacted the property manager, Mary Schultz, who instructed Plaintiff and Raul to come to the office where she allegedly expressed her belief that they did not take the figurine. (Id.) The next day, while Plaintiff and Raul were together in a truck, Mary called Raul and Plaintiff allegedly overheard her tell Raul to come to the office but to leave Plaintiff "behind in the shop." (Id.) While Raul and Mary were meeting, Plaintiff alleges he took "a 2 hour lunch" break. (Id. at 10-11.)

Later that day, at approximately 6 or 7 p.m., Stryker called Plaintiff and informed him that he would no longer be working at Woodcrest. (Id. at 11.) When Plaintiff questioned Stryker, the amended complaint alleges that Stryker told Plaintiff that "it has something to do with a figurine." (Id.) When Plaintiff protested, Stryker alleged told Plaintiff it is also because "you have no driver's license." (Id.) When Plaintiff objected and reminded Stryker that Plaintiff had emailed a copy of his driver's license and Social Security card prior to commencing his employment, Plaintiff alleges that Stryker "became more upset." (Id.) Plaintiff alleges that he then told Stryker that his rights were being violated and that he believes his termination is "because of [his] African American status." (Id. at 12.)

For relief, Plaintiff seeks the termination of employment of Schultz and Raul "if [they are] still employed" as well as $5 million from each Defendant and additional punitive damages and any other relief "deemed just and proper by this honorable institution." (Id. ¶ V at 6.)

## II. Discussion

### A. *In Forma Pauperis* Application

Upon review of Plaintiff's declaration in support of his renewed application to proceed *in forma pauperis*, the Court finds that Plaintiff is qualified to commence this action without prepayment of the filing fee. 28 U.S.C. § 1915(a)(1).

Therefore, Plaintiff's renewed application to proceed *in forma pauperis* is granted.

### B. Standard of Review

The in forma pauperis statute requires that a court dismiss an action if it determines that it "(i) is frivolous or malicious, (ii) fails to state a claim upon which relief may be granted, or (iii) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). The Court must dismiss the action as soon as it makes such a determination.

Pro se submissions are afforded wide interpretational latitude and should be held "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam); see also Boddie v. Schnieder, 105 F.3d 857, 860 (2d Cir. 1997). In addition, the court is required to read a plaintiff's pro se amended complaint liberally and interpret it as raising the strongest arguments it suggests. United States v. Akinrosotu, 637 F.3d 165, 167 (2d Cir. 2011) (per curiam) (citation omitted).

**\*3** The Supreme Court has held that pro se complaints need not even plead specific facts; rather the complainant "need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (internal quotation marks and citations omitted); cf. Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."). However, a pro se plaintiff must still plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Id. at 678. While " 'detailed factual allegations' " are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " Id. at 678 (quoting Twombly, 550 U.S. at 555).

### C. Title VII

Title VII makes it an unlawful for an employer to refuse to hire, discharge, or otherwise discriminate against any individual with respect to employment because of such individual's race, color, religion, sex, or national origin. See 42 U.S.C. § 2000e-2(a)(1). In order to state a claim for

Chisholm v. Stryker, Not Reported in Fed. Supp. (2022)

2022 WL 3647288

Case 5:25-cv-00101-DNH-TWD    Document 7    Filed 03/19/25    Page 34 of 60

employment discrimination under Title VII, a plaintiff must allege (1) that he is a member of a protected class, (2) that he was qualified for the position at issue, (3) that he suffered an adverse employment action, and (4) that the circumstances give rise to an inference of discriminatory motivation. Feingold v. New York, 366 F.3d 138, 152 (2d Cir. 2004); see Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 78 (2d Cir. 2015) ("[I]n a Title VII discrimination case, a plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) his race, color, religion, or national origin was a motivating factor in the employment decision."). While plaintiff is not required to demonstrate a prima facie case of discrimination at the pleading stage, he must allege facts that "give plausible support to a *minimal* inference of discriminatory motivation." Littlejohn v. City of New York, 795 F.3d 297, 311 (2d Cir. 2015) (emphasis in original).

The "sine qua non of a ... discriminatory action claim under Title VII is that the discrimination must be *because of*" the employee's protected characteristic. Patane v. Clark, 508 F.3d 106, 112 (2d Cir. 2007) (per curiam) (emphasis in original). Accordingly, a claim for discrimination under Title VII is properly dismissed where the plaintiff fails "to plead any facts that would create an inference that any adverse action taken by any defendant was based upon" the protected characteristic. Id. Here, as is readily apparent, Plaintiff has not alleged any facts from which the Court could reasonably construe circumstances surrounding the termination of Plaintiff's employment that give rise to an inference of discrimination. Indeed, Plaintiff acknowledges that his employment was "temporary" and alleges no facts suggesting that any of the Defendants' actions were motivated at all by Plaintiff's race. (ECF No. 7 at 8, 13 and in toto.)

Courts in this Circuit have routinely dismissed discrimination claims where the plaintiff's allegations, like here, fail to suggest discriminatory intent. See, e.g., Pantane, 508 F.3d at 112 & 112 n. 3 (finding that the district court correctly noted that "[p]laintiff failed to allege even the basic elements of a discriminatory action claim."); Lucas v. Apple Food Serv. of New York, LLC, No. 15-CV-4007(SJF)(AKT), 2015 WL 6507495, at *3 (E.D.N.Y. Oct. 27, 2015) (finding "the complaint fails to plead any facts linking defendant's conduct, i.e., the suspension of plaintiff without pay for two (2) weeks and termination of her employment, to plaintiff's race, color, gender, religion or pregnancy, or supporting a reasonable inference that defendant discriminated against plaintiff because of those protected characteristics.") (citing

Hedges v. Town of Madison, 456 F. App'x 22, 24 (2d Cir. Jan.13, 2012) (summary order) (affirming dismissal, inter alia, of the plaintiff's ADA claim on the basis that he "ha[d] not adequately pleaded discrimination on the basis of disability" because he "alleg[ed] not a single fact in support of his claims of discriminatory treatment which might conceivably give notice of the basis of his claims to the defendants"); Berkery v. Archdiocese of Hartford, 352 F. App'x 487, 490 (2d Cir. 2009) (summary order) (affirming dismissal of the plaintiff's ADA claim because the complaint presented no allegations linking the defendant's employment decision to the plaintiff's disability or supporting an inference of disability discrimination); Samuel v. Bellevue Hosp. Ctr., 366 F. App'x 206, 207 (2d Cir. Feb.17, 2010) (summary order) (affirming dismissal of the plaintiff's employment discrimination claim on the basis that he "failed to allege sufficient facts to render plausible his conclusory assertion that the defendants discriminated against him on the basis of his membership in a protected class.")); see also Maldonado v. George Weston Bakeries, 441 F. App'x 808, 808-09 (2d Cir. 2011) (summary order) (affirming dismissal of pro se complaint where plaintiff alleged that other employees involved in similar altercations were given preferential treatment, but did not allege that this preferential treatment was due to race or age); Kouakou v. Fideliscare N.Y., 920 F. Supp. 2d 391 (S.D.N.Y. 2012) (dismissing pro se complaint where comments alleged in complaint did "not create an inference that the denial of [p]laintiff's requested transfer were motivated by his race or national origin, particularly where [p]laintiff [did not allege that employer granted transfer requests of similarly situated employees outside of plaintiff's racial group"); Palmer v. Safetec of Am., Inc., No. 11-CV-702, 2012 WL 2994060, at *7 (W.D.N.Y. May 31, 2012) (report and recommendation) (dismissing complaint where plaintiff "fail[ed] to allege any facts that could plausibly be construed as establishing [that] Plaintiff's discharge was based on his membership in any of the protected classes [at issue]," and noting that plaintiff failed "to identify or to otherwise specify" employees outside of plaintiff's protected classes who received preferential treatment or engaged in similar misconduct), adopted by 2012 WL 2994057 (W.D.N.Y. July 20, 2012).

**\*4** Given that absence of any facts suggesting that the termination of Plaintiff's temporary employment was motivated, even in part, by discriminatory animus, he has not alleged a plausible claim for relief. Nor has Plaintiff alleged that others were treated more favorably, including Raul, whose employment status is apparently unknown to

Chisholm v. Stryker, Not Reported in Fed. Supp. (2022)

2022 WL 3647288

Case 5:25-cv-00101-DNH-TWD    Document 7    Filed 03/19/25    Page 35 of 60

Plaintiff. (See ECF No. 7 at ¶ V.) Accordingly, the amended complaint is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii). [2]

[2]    In addition, it is long established that individuals are not subject to liability under Title VII. See Patterson v. County of Oneida, 375 F.3d 206, 221 (2d Cir. 2004); Jones-Khan v. Westbury Bd. of Educ., No. 21-CV-3908(JMA)(JMW), 2022 WL 280646, at *7 (E.D.N.Y. Jan. 31, 2022) (dismissing Title VII claims against individual defendants because there is no individual liability under Title VII); Gioia v. Singh, No. 20-CV-4014(JMA)(SIL), 2021 WL 602701, at *2 (E.D.N.Y. Feb. 16, 2021) (" 'Title VII does not impose liability on individuals.' ") (quoting Tomka v. Seiler Corp., 66 F.3d 1295, 1317 (2d Cir. 1995)) (add'l citation omitted). Accordingly, Plaintiff's Title VII claim against Stryker is not plausible and is dismissed for this additional reason.

### D. State Law Claims

Although Plaintiff does not include any other laws apart from Title VII in the amended complaint, he did, however, check the boxes on the form to allege that his claims are also brought pursuant to unspecified other federal, state, and local laws. (ECF No. 7 at 4.) The Court presumes that Plaintiff intends to assert discrimination claims under the New York State Human Rights Law, N.Y. Executive Law § 296 ("NYSHRL"). Discrimination claims under the NYSHRL are analyzed under the same framework and pleading standard as Title VII claims. See, e.g., Ruiz v. County of Rockland, 609 F.3d 486, 491 (2d Cir. 2010); Weinstock v. Columbia Univ., 224 F.3d 33, 42 n. 1 (2d Cir. 2000) ("The identical standards apply to employment discrimination claims brought under Title VII [and] ...New York Executive Law § 296 [NYSHRL] ..."). Accordingly, for the reasons set forth above, Plaintiff has not alleged a plausible claim under the NYSHRL either and any such claims are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii).

With regard to any other remaining state law claims, under 28 U.S.C. § 1367(a), "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." However, courts "may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims

over which it has original jurisdiction." Id. § 1367(c); (c)(3); see Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234, 245 (2d Cir. 2011). The Supreme Court explained: "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine -- judicial economy, convenience, fairness, and comity -- will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988).

Here, given the absence of a viably pled federal law claim, the interests of judicial economy, convenience, fairness, and comity weigh in favor of not exercising supplemental jurisdiction at this time over any other state law claims that may be reasonably construed from the amended complaint. Accordingly, the Court declines to exercise supplemental jurisdiction over any other potential state-law claims contained in Plaintiff's amended complaint, apart from the NYSHRL claim which the Court has already dismissed, and thus dismisses any such claims without prejudice.

### E. Leave to Amend

**\*5**    A pro se plaintiff should ordinarily be given the opportunity "to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Shomo v. City of New York, 579 F.3d 176, 183 (2d Cir. 2009) (quoting Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2d Cir. 1999)). Here, the Court has carefully considered whether Plaintiff should be granted leave to amend his complaint. In an abundance of caution, Plaintiff is granted leave to file a second amended complaint in accordance with this Memorandum and Order. Plaintiff shall: (1) clearly label his submission "Second Amended Complaint"; (2) include the same docket number as this Order, 22-CV-2705(JMA)(SIL); and (3) file it within thirty (30) days from the date of this Order. Plaintiff is cautioned that the second amended complaint will completely replace the present amended complaint and, therefore, he must include all claims against any Defendants he seeks to pursue in the second amended complaint and shall include factual allegations concerning the challenged conduct pertaining to each Defendant. If Plaintiff does not file a second amended complaint within the time allowed, judgment shall enter and this case will be closed.

Plaintiff is encouraged to consult with the Hofstra Law Pro Se Clinic located in the Central Islip Courthouse, which can provide free information, advice, and limited scope legal

2022 WL 3647288

assistance to non-incarcerated pro se litigants. The Court notes that the Pro Se Clinic is not part of, nor affiliated with, the United States District Court. The Clinic offers services such as: providing brief legal counseling; advising you about potential federal claims prior to filing suit; explaining federal court rules and procedures; and reviewing and editing draft pleadings. Consultations with the Pro Se Clinic can be conducted remotely via telephone. If you wish to contact the Pro Se Clinic to make an appointment, email them at PSLAP@Hofstra.edu or leave a message at (631) 297-2575.

### III. Conclusion

For the foregoing reasons, the Plaintiff's renewed application to proceed in forma pauperis is granted. However, Plaintiff's amended complaint is dismissed sua sponte in its entirety without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii) for failure to state a claim for relief. Plaintiff is granted leave to file a second amended complaint in accordance with this Memorandum and Order. If Plaintiff elects to further amend his complaint, he shall clearly label his submission "Second Amended Complaint," include the same docket number as this Order, 22-CV-2705(JMA)(SIL), shall file

it within thirty (30) days from the date of this Order. Plaintiff is cautioned that the second amended complaint will completely replaces the prior complaints. Therefore, Plaintiff must include all claims against any Defendants he seeks to pursue in the second amended complaint. If Plaintiff does not file an amended complaint within the time allowed, judgment shall enter and this case will be closed.

The Court declines to exercise supplemental jurisdiction over any remaining state law claims alleged in the complaint and therefore the state law claims are dismissed without prejudice. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore in forma pauperis status is denied for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

### SO ORDERED.

### All Citations

Not Reported in Fed. Supp., 2022 WL 3647288

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:25-cv-00101-DNH-TWD    Document 7    Filed 03/19/25    Page 37 of 60

Wright v. Martin, Harding and Mazzotti, LLP, Not Reported in Fed. Supp. (2022)

2022 WL 19795849

2022 WL 19795849
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Eric WRIGHT, Plaintiff,

v.

MARTIN, HARDING AND MAZZOTTI,
LLP; and Cassandra Anne Kazukenus,
Esq., Individually, Defendants.

1:22-CV-0515 (MAD/ML)
|
Signed July 19, 2022

**Attorneys and Law Firms**

ERIC WRIGHT, Plaintiff, Pro Se, 1038 Regent Street,
Schenectady, New York 12309.

## ORDER and REPORT-RECOMMENDATION

MIROSLAV LOVRIC, United States Magistrate Judge

**\*1** The Clerk has sent this *pro se* Complaint (Dkt. No. 1)
together with an application to proceed *in forma pauperis*
(Dkt. No. 2), a motion for ECF login (Dkt. No. 4), and an
amended application to proceed *in forma pauperis* (Dkt. No.
6) to the Court for review. For the reasons discussed below,
Plaintiff's amended motion for leave to proceed *in forma
pauperis* (Dkt. No. 6) is granted, his motion for ECF login
credentials (Dkt. No. 4) is granted, his motion for leave to
proceed *in forma pauperis* (Dkt. No. 2) is denied as moot,
and I recommend that Plaintiff's Complaint (Dkt. No. 1) be
dismissed in its entirety with leave to amend.

## I. BACKGROUND

Liberally construed, [1] Plaintiff's Complaint asserts that his
rights were violated by Defendants Martin, Harding and
Mazzotti, LLP ("Defendant MHM") and Cassandra Anne
Kazukenus, Esq. ("Defendant Kazukenus") (collectively
"Defendants"). (*See generally* Dkt. No. 1.) More specifically,
the Complaint alleges that Defendants discriminated and
retaliated against him on the basis of his race, national origin/
ethnic heritage, and gender. (*Id.*)

[1]      The court must interpret *pro se* complaints to
raise the strongest arguments they suggest. *Soto v.*

*Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting
*Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.
1994)).

Plaintiff alleges that he was hired as a law clerk by Defendant
MHM on March 25, 2018. (*Id.*) Plaintiff alleges that at some
unspecified time, he was suspended from his employment
pending an investigation into allegations made by two
Caucasian female employees, who alleged (1) that Plaintiff
made sexually harassing comments to Defendant Kazukenus,
and (2) for stalking, harassing, and intimidating a paralegal
during a lunchtime encounter in Defendant MHM's employee
parking lot. (*Id.* at 13.)

Plaintiff alleges that Defendant MHM terminated him on or
about November 18, 2020, for sexual harassment because his
behavior threatened, intimidated, and made the two female
employees uncomfortable. (*Id.* at 14.) Plaintiff alleges that
the accusations against him are baseless, racially motivated,
exaggerated, and that Defendants aided and abetted the
accusing females. (*Id.*) Plaintiff alleges that Defendants
"blamed him for conduct which objectively could not be
considered harassing, intimidating, or threatening ... based on
implicit negative stereotypes of Black males by Caucasian
females." (*Id.*)

Plaintiff alleges that after he "made them aware of systemic
racism.... and its effect on the lives of Black Americans,
[Plaintiff] became a victim of that very thing by these false
allegations." (*Id.* at 15.) Plaintiff alleges that in November
2020—the time of his termination—he was the only Black
professional member of Defendant MHM. (*Id.* at 15.) Plaintiff
alleges that he was terminated because he is a Black man,
social justice activist, and Defendants elected to believe the
unsubstantiated accusations of Caucasian staff members. (*Id.*)

Plaintiff alleges that he suffered adverse employment actions
by Defendants including suspension, termination, loss of
benefits, and financial distress. (*Id.* at 14.) Plaintiff alleges
that he now suffers from panic attacks and depression
including Major Depression and Generalized Anxiety
Disorder. (*Id.*)

**\*2** Based on these factual allegations, Plaintiff alleges the
following three claims: (1) a claim of discrimination against
Defendants pursuant to Title VII; (2) a claim of retaliation
pursuant to Title VII; and (3) a claim of hostile work
environment pursuant to Title VII. (*See generally* Dkt. No.
1.) Plaintiff seeks the following seven forms of relief: (1)
back pay and lost benefits; (2) damages for emotional grief,

Wright v. Martin, Harding and Mazzotti, LLP, Not Reported in Fed. Supp. (2022)

Case 5:25-cv-00101-DNH-TWD    Document 7    Filed 03/19/25    Page 38 of 60

2022 WL 19795849

stress, humiliation, career damage, and physical harm; (3) an injunction requiring Defendants to re-employ him, or, in the alternative, front pay and benefits; (4) pre- and post-judgment interest; (5) attorneys' fees and costs; (6) litigation expenses; and (7) any other relief that the Court deems just and proper.

Plaintiff also filed an application to proceed *in forma pauperis*. (Dkt. Nos. 2, 6.)

## II. PLAINTIFF'S APPLICATIONS TO PROCEED *IN FORMA PAUPERIS*

"When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $402, must ordinarily be paid." 28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed *in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action. 28 U.S.C. § 1915(a)(1). [2] After reviewing Plaintiff's amended *in forma pauperis* application (Dkt. No. 6), the Court finds that Plaintiff meets this standard. Therefore, Plaintiff's amended application to proceed *in forma pauperis* is granted. [3]

[2]    The language of that section is ambiguous because it suggests an intent to limit availability of *in forma pauperis* status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making *in forma pauperis* status available to any litigant who can meet the governing financial criteria. *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

[3]    Plaintiff is reminded that, although his amended application to proceed *in forma pauperis* has been granted, he is still required to pay fees that he may incur in this action, including copying and/or witness fees.

Because Plaintiff's amended application to proceed *in forma pauperis* is granted, the Court denies Plaintiff's application to proceed *in forma pauperis* as moot. (Dkt. No. 2.)

## III. RELEVANT LEGAL STANDARDS

### A. Legal Standard Governing Initial Review of a Complaint

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

**\*3**    "In reviewing a complaint ... the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint sufficiently raised a cognizable claim). "[E]xtreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties ... have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

The Court, however, also has an overarching obligation to determine that a claim is not legally frivolous before

Case 5:25-cv-00101-DNH-TWD    Document 7    Filed 03/19/25    Page 39 of 60
Wright v. Martin, Harding and Mazzotti, LLP, Not Reported in Fed. Supp. (2022)
2022 WL 19795849

permitting a *pro se* plaintiff's complaint to proceed. *See, e.g.,* *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.' *Aguilar v. United States*, 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)); *see also* *Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory for purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

### B. Legal Standards Governing Plaintiff's Claims
Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of," *inter alia*, "such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Thus, by definition, "Title VII protects a limited class of persons from discrimination." *Kiley v. Am. Soc'y for Prevention of Cruelty to Animals*, 296 F. App'x 107, 109 (2d Cir. 2008) (quoting 42 U.S.C. § 2000e-2(a)(1)-(2)). Only employers can be held liable under Title VII claims. *Reynolds v. Barrett*, 685 F.3d 193, 202 (2d Cir. 2012).

Before a plaintiff can bring a private civil action under Title VII, he must satisfy a jurisdictional prerequisite by filing a charge with the EEOC. *Morgan v. NYS Att'y Gen.'s Off.*, 11-CV-9389, 2013 WL 491525, at *6 (S.D.N.Y. Feb. 8, 2013) (citing *Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135, 146 (2d Cir. 2012) (citing 42 U.S.C. §§ 2000e-5 (e)(1), (f)(1))).

### 1. Discrimination
To state a discrimination claim under Title VII, a plaintiff must allege four elements: "(1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to an inference of discrimination." *Bir v. Pfizer, Inc.*, 510 F. App'x 29, 30 (2d Cir. 2013) (quoting *Reynolds*, 685 F.3d at 202 (internal quotation marks and alteration omitted)). "A showing of disparate treatment–that is, a showing that the employer treated plaintiff less favorably than a similarly situated employee outside his protected group–is a recognized method of raising an inference of discrimination for purposes of making out a prima facie case." *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003).

**\*4** At the pleadings stage of Title VII discrimination claims, "the allegations in the complaint need only give plausible support to the reduced prima facie requirements that arise under *McDonnell Douglas* in the initial phase of Title VII litigation." *Littlejohn v. City of New York*, 795 F.3d 297, 316 (2d Cir. 2015) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Thus, it is not necessary for a plaintiff to plead a prima facie case for discrimination, "because the *McDonnel Douglas* burden shifting standard is 'an evidentiary standard, not a pleading standard.' " *Barton v. Warren Cnty.*, 19-CV-1061, 2020 WL 4569465, at *5 (N.D.N.Y. Aug. 7, 2020) (Suddaby, C.J.) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510, 515 (2002)). Based on *McDonnel Douglas*, a plaintiff will survive a motion to dismiss in a "Title VII discrimination case ... [if he] ... plausibly allege[s] that (1) the employer took adverse action against him, and (2) his race, color, religion, or national origin was motivating factor in the employment decision." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015). A Title VII discrimination complaint satisfies Fed. R. Civ. P. 8(a) if it gives the defendant "fair notice" of the claims, by "indicat[ing the possibility of discrimination and thus present[ing] a plausible claim for disparate treatment." *Barton*, 2020 WL 4569465 at *5 (quoting *Marchioli v. Garland Co., Inc.*, 11-CV-0124, 2011 WL 1983350, at *3 (N.D.N.Y. May 20, 2011) (D'Agostino, J.)). This pleading burden may be met by the plaintiff if he "allege[s] facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Vega*, 801 F.3d at 87 (citing *Littlejohn*, 795 F.3d at 310).

### 2. Retaliation
To state a prima facie claim for retaliation under Title VII, a plaintiff must allege facts plausibly suggesting four elements: "(1) she engaged in a protected activity; (2) her employer

Case 5:25-cv-00101-DNH-TWD    Document 7    Filed 03/19/25    Page 40 of 60

Wright v. Martin, Harding and Mazzotti, LLP, Not Reported in Fed. Supp. (2022)

2022 WL 19795849

was aware of this activity; (3) the employer took adverse employment action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013). "Section 704(a) of Title VII prohibits retaliation against two kinds of protected activity: 'participation' in investigations into discrimination and 'opposition' to conduct prohibited by the statute." *Irons v. Bedford-Stuyvesant Cmty. Legal Servs.*, 13-CV-4467, 2015 WL 5692860, at *18 (E.D.N.Y. Sept. 28, 2015). "Under the opposition clause, 'a plaintiff engages in a protected activity when he or she opposes an employment practice made unlawful under the provisions of Title VII.' " *Cooper v. N.Y. Dep't of Labor*, 14-CV-0717, 2015 WL 5918263 at *6 (N.D.N.Y. 2015) (Suddaby, C.J.) (quoting *Kauffman v. Maxim Healthcare Servs., Inc.*, 04-CV-2869, 2006 WL 1983196, at *5 (E.D.N.Y. July 13, 2006)). Notably, a plaintiff need not allege "that the conduct she opposed was actually a violation of Title VII, but only that she possessed a good faith, reasonable belief that the underlying employment practice was unlawful under that statute." *Summa*, 708 F.3d at 126, (quoting *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998)).

"The required showing of an adverse employment action differs in the context of a retaliation claim from the required showing in a discrimination claim. In the context of retaliation claims, adverse employment actions are defined broadly as employer actions that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.' " *Lampros v. Banco do Brasil, S.A.*, 10-CV-9576, 2012 WL 6021091, at *9 (S.D.N.Y. Dec. 4, 2012) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)); *see also Seale v. Madison Cnty.*, 929 F. Supp. 2d 51, 75 (N.D.N.Y. Mar. 7, 2013) (Suddaby, J.) (holding that an employer moving an employee to a different building and changing that employee's work hours are enough of an inconvenience to constitute an adverse employment action in the context of retaliation, but not in a discrimination claim).

Finally, "[i]n Title VII retaliation claims, a plaintiff may establish a causal connection between the protected activity and the adverse employment action either through direct evidence of retaliatory animus, or by circumstantial evidence." *Humphrey v. Cnty. of Nassau*, 06-CV-3682, 2009 WL 875534, at *15 (E.D.N.Y. Mar. 30, 2009).

### 3. Hostile Work Environment

**\*5** To state a hostile work environment claim under Title VII, "a plaintiff must plead facts that would tend to show that the complained conduct: (1) is objectively severe or pervasive–that is, ... creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's sex." *Barton*, 2020 WL 4569465 at *8 (quoting *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007)). "To satisfy this standard, a plaintiff must 'produce enough evidence to show that the workplace [was] permeated with discriminatory intimidation, ridicule, and insult, that [was] sufficiently severe or pervasive to alter the conditions of the victim's employment.' " *Andersen v. Rochester City Sch. Dist.*, 481 F. App'x 628, 630 (2d Cir. 2012) (quoting *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 102 (2d Cir. 2010)). "This standard has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Littlejohn*, 795 F.3d at 321 (quoting *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014)). "Hostile work environment claims, however, 'are meant to protect individuals from abuse and trauma that is severe' and 'are not intended to promote or enforce civility, gentility, or even decency.' " *Prindle v. City of Norwich*, 15-CV-1481, 2018 WL 1582429, at *10 (N.D.N.Y. Mar. 27, 2018) (Suddaby, C.J.) (quoting *Curtis v. DiMaio*, 46 F. Supp.2d 206, 213-14 (E.D.N.Y. 1999), *aff'd*, 205 F.3d 1322 (2d Cir. 2000)). "As a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004) (internal quotation marks omitted) (quoting *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002))

### IV. ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that all causes of action be dismissed.

### A. Claims Against Defendant Kazukenus

Case 5:25-cv-00101-DNH-TWD    Document 7    Filed 03/19/25    Page 41 of 60

Wright v. Martin, Harding and Mazzotti, LLP, Not Reported in Fed. Supp. (2022)

2022 WL 19795849

Plaintiff sued Defendant Kazukenus individually. However, Title VII does not impose individual personal liability. *Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 253 (E.D.N.Y. 2015); *see also Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003) ("[U]nder Title VII individual supervisors are not subject to [personal] liability."). Additionally, a plaintiff cannot seek to impose Title VII liability on an individual acting in his or her official capacity. *See Emmons v. City Univ. of N.Y.*, 715 F. Supp. 2d 394, 410 (E.D.N.Y. 2010) (collecting cases) ("Although the Second Circuit has not yet explicitly decided the issue, 'many recent decisions in this Circuit have rejected Title VII official capacity claims.' ") (quoting *Martin v. State Univ. of N.Y.*, 704 F. Supp. 2d 202, 235-36 (E.D.N.Y. 2010)). Because Plaintiff cannot successfully claim that Defendant Kazukenus violated Title VII in either her individual or official capacity, I recommend that Plaintiff's Title VII claims against Defendant Kazukenus be dismissed.

### B. Claims Against Defendant MHM

#### 1. Whether Plaintiff Failed to Allege Facts Plausibly Suggesting a Discrimination Claim

After carefully considering the matter, I answer this question in the affirmative.

The Complaint fails to allege facts plausibly suggesting that Plaintiff's race, national origin/ethnic heritage, or gender, had anything to do with his termination or any other allegedly adverse job action. Even giving the allegations in Plaintiff's Complaint a generous construction, Plaintiff alleges that he is a Black male, at least one of his supervisors was a white female, and he experienced some problems during his employment, leading up to and including his termination.

The law is clear, though, that a Title VII plaintiff must allege more than that. "Simply being a member of a protected class, without something more to link that status to the action in question, is not enough to raise a reasonable inference of discriminatory animus." *Cole v. Board of Trustees of Northern Ill. Univ.*, 838 F.3d 888, 900 (7th Cir. 2016); *see also Canady v. Union 1199/SEIU*, 527 F. Supp. 3d 515, 516 (W.D.N.Y. 2021) ("simply falling into a protected category is not enough"); *Perry v. County of Westchester*, 06-CV-3000, 2008 WL 11438085, at *17 (S.D.N.Y. Mar. 31, 2008) ("Plaintiff's membership in a protected class in and of itself does not establish discriminatory animus"); *see also Karunakaran v. Borough of Manhattan Cmty. Coll.*, 18-CV-10723, 2022 WL 902370, at *3 (S.D.N.Y. Mar. 28, 2022) (quoting *Littlejohn*, 795 F.3d at 311) ("Although a plaintiff is not required to plead facts proving each element of a *prima facie* case of discrimination at the pleading stage, her allegations must provide 'plausible support' for a 'minimal inference' that the employer was motivated by discriminatory intent.").

**\*6** Beyond conclusory allegations that he was terminated as a result of discrimination, Plaintiff does not allege any specific facts showing that the termination was related to discrimination on the basis of his race, national origin, or gender. *Karunakaran*, 2022 WL 902370, at *3.

Further, to the extent that Plaintiff sought to allege a discrimination claim based on disparate treatment, I recommend that it be dismissed because Plaintiff's allegations are entirely conclusory.

"To establish an inference of discrimination, a plaintiff must allege that 'she was similarly situated in all material respects to the individuals with whom she seeks to compare herself.' " *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)). The judgment rests on "whether the plaintiff and those he maintains were similarly situated were subject to the same workplace standards." *Brown*, 756 F.3d at 230 (quoting *Graham*, 230 F.3d at 40). "The plaintiff's and comparator's circumstances must bear a 'reasonably close resemblance,' but need not be 'identical.' " *Id.* (quoting *Graham*, 230 F.3d at 40). Absent direct evidence of discrimination, "a plaintiff must plausibly allege facts that *would support a finding* that she suffered an adverse employment action and 'has at least minimal support for the proposition that the employer was motivated by discriminatory intent,' " to survive a motion to dismiss a Title VII claim. *Thomson v. Odyssey House*, 14-CV-3857, 2015 WL 5561209, at *14 (E.D.N.Y. Sept. 21, 2015) (emphasis in original) (quoting *Littlejohn*, 795 F.3d at 311).

Plaintiff alleges that "similar conduct from non-Black, African American males did not result in suspension, termination from employment, or other disciplinary action." (Dkt. No. 1 at ¶ 48.) Plaintiff does not allege how he was similarly situated to these alleged comparators, nor does he provide any specific examples of disparate treatment with respect to these co-workers. (*See generally* Dkt. No. 1); *see Karunakaran*, 2022 WL 902370, at *4 (dismissing the plaintiff's Title VII discrimination claim where the amended

Case 5:25-cv-00101-DNH-TWD    Document 7    Filed 03/19/25    Page 42 of 60

Wright v. Martin, Harding and Mazzotti, LLP, Not Reported in Fed. Supp. (2022)

2022 WL 19795849

complaint did not identify or describe an alleged comparator or describe specific examples of disparate treatment).

As a result, I recommend that Plaintiff's discrimination claim pursuant to Title VII be dismissed for failure to state a claim upon which relief may be granted.

### 2. Whether Plaintiff Failed to Allege Facts Plausibly Suggesting a Retaliation Claim

After carefully considering the matter, I answer this question in the affirmative.

The Complaint fails to allege facts plausibly suggesting that Plaintiff engaged in protected activity. Plaintiff alleges that he "faced unlawful retaliation for asserting protected rights relating to the presence of systemic ra[cism], and overt discrimination and implicit bias existing at [Defendant] MHM." (Dkt. No. 1 at ¶ 33.) In addition, Plaintiff alleges that he "was targeted because of [his] race and views on systemic racism and fired because of the same" (Dkt. No. 1 at ¶ 42) and that he is a "social justice activist whose outspokenness on systemic racism brought unwanted attention to [Defendant] MHM's senior management," (Dkt. No. 1 at ¶ 49). However, Plaintiff's involvement advocating for social justice and vocal views on systemic racism do not reflect his opposition to a "practice made an unlawful employment practice" by Title VII. 42 U.S.C. § 2000e-3(a). Nor could Plaintiff reasonably have believed otherwise. "In defining with great care and precision those behaviors that qualify as 'unlawful employment practices,' the statute lays on employers no obligation to maintain any particular procedures for handling internal complaints. Indeed, the relevant provisions do not touch on the subject at all." *Cooper v. New York State Dep't of Labor*, 819 F.3d 678, 681 (2d Cir. 2016).

**\*7** "That [Plaintiff] sought to ensure that hypothetical victims of discrimination received a fair shake does not mean that [ ]he 'possessed a good faith, reasonable belief' " that he opposed an "unlawful employment practice" of Defendant MHM under the statute. *Cooper*, 819 F.3d at 682 (citing *Summa*, 708 F.3d at 126; 42 U.S.C. § 2000e-3(a)); *see Cole*, 838 F.3d at 901 (plaintiff's "membership in a protected class, without anything more, is not enough to transform his general complaint about improper workplace practices into a complaint opposing race discrimination").

The Second Circuit held that although "[w]e are mindful that when an employer punishes an employee for conduct intended to secure equality in the workplace, it does little to further—and may hinder—Title VII's primary objective of eradicating invidious discrimination in employment[,] .... [w]e may not, in the name of advancing general aims, ignore Congress's choice to carefully circumscribe the universe of 'unlawful employment practices'—and thus to circumscribe the universe of conduct protected from retaliation." *Cooper*, 819 F.3d at 682 (citing *CTS Corp. v. Waldburger*, 573 U.S. 1, 12 (2014)).

As a result, I recommend that Plaintiff's retaliation claim pursuant to Title VII be dismissed for failure to state a claim upon which relief may be granted.

### 3. Whether Plaintiff Failed to Allege Facts Plausibly Suggesting a Hostile Work Environment Claim

After carefully considering the matter, I answer this question in the affirmative.

First, the Complaint fails to allege facts plausibly suggesting that Plaintiff was "exposed to hostility so pervasive or severe that it altered the conditions of his employment." *Ware v. L-3 Vertex Aerospace, LLC*, 16-CV-8067, 2020 WL 783764, at *9 (S.D.N.Y. Feb. 18, 2020) (citing *Thomas v. iStar Fin., Inc.*, 448 F. Supp. 2d 532, 534 (S.D.N.Y. 2006) (employee failed to establish a hostile work environment when, among other things, his employer ignored his requests for more efficient procedures, accused him of wrongdoing when items went missing, and delayed his training)) (employee failed to allege facts plausibly suggesting a hostile work environment where he alleged, *inter alia*, that he was "baselessly accused of theft.").

Second, the Complaint fails to allege facts plausibly suggesting that any hostility Plaintiff faced was racially motivated. Plaintiff acknowledges that he was terminated based on accusations that he harassed and intimidated other employees of Defendant MHM, but includes extremely speculative and overly conclusive allegations that he faced those accusations because of his race, national origin, or gender, instead of his own behavior. (Dkt. No. 1 at ¶¶ 36-38); *see Toibert v. Smith*, 790 F.3d 427, 439 (2d Cir. 2015) ("It is axiomatic that the plaintiff must also show that the hostile conduct occurred because of a protected characteristic."); *Daniels v. Am. Airlines*, 19-CV-3110, 2020

WL 9816000, at *18 (E.D.N.Y. Sept. 4, 2020) (citing *LeGrand v. Walmart Stores East, LP*, 779 F. App'x 779, 782 (2d Cir. 2019)) (dismissing the plaintiff's hostile work environment claim where the "[p]laintiff does not set forth any factual allegations to suggest that [his] colleagues' alleged bullying was motivated by discriminatory intent or because of [the p]laintiff's age or any other protected characteristic.").

As a result, I recommend that Plaintiff's hostile work environment claim pursuant to Title VII be dismissed for failure to state a claim upon which relief may be granted.

## V. OPPORTUNITY TO AMEND

 **\*8** Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).

In this case, it is not clear whether better pleading would permit Plaintiff to assert a cognizable cause of action against Defendant MHM. Out of deference to Plaintiff's *pro se* status, I recommend that Plaintiff be granted leave to amend the Complaint. However, I recommend that Plaintiff's Title VII claims against Defendant Kazukenus be dismissed without leave to amend because the problem with those claims are substantive such that a better pleading will not cure it. *Duncanson v. Kaizer Devs. LLC*, 21-CV-0587, 2021 WL 3914066, at *6 (N.D.N.Y. Aug. 2, 2021) (Lovric, M.J.) (citing *Pitter v. Target Corp.*, 20-CV-0183, 2020 WL 8474858, at *7 (N.D.N.Y. Sept. 1, 2020) (Hummel, M.J.) (recommending dismissal with prejudice and without leave to amend the plaintiff's Title VII claims against the defendant in his

personal capacity)) (recommending the plaintiff's Title VII claim against individuals be dismissed without leave to amend), *report and recommendation adopted by*, 2021 WL 3912179 (N.D.N.Y. Sept. 1, 2021) (Suddaby, C.J.).

If Plaintiff chooses to avail himself of an opportunity to amend, such amended pleading must set forth a short and plain statement of the facts on which he relies to support any legal claims asserted. Fed. R. Civ. P. 8(a). In addition, the amended complaint must include allegations reflecting how the individuals named as Defendants are involved in the allegedly unlawful activity. Finally, Plaintiff is informed that any such amended complaint will replace the existing Complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (internal quotation marks omitted)). [4]

[4]       To the extent that Plaintiff chooses to file an amended complaint, he is cautioned that the Amended Complaint should relate solely to the alleged wrongs committed by Defendant(s) and should not be interposed with family pictures that have no bearing on the underlying allegations of the case.

## VI. PLAINTIFF'S MOTION FOR ECF LOGIN AND PASSWORD

Plaintiff has also submitted a request for ECF login and password. (Dkt. No. 4.)

The Court has reviewed Plaintiff's request for permission to electronically file documents via CM/ECF. Since Plaintiff has filed a certification as directed showing that he is in compliance with the Court's requirements, permission is granted for Plaintiff to participate in electronic case filing. The Clerk is directed to assign Plaintiff an ECF login and password. The Court may revoke these electronic filing privileges if it determines in its sole discretion that Plaintiff's use of the system is not satisfactory.

 **\*9** **ACCORDINGLY**, it is

**ORDERED** that Plaintiff's amended application to proceed *in forma pauperis* (Dkt. No. 6) is **GRANTED**; and it is further

Case 5:25-cv-00101-DNH-TWD   Document 7   Filed 03/19/25   Page 44 of 60

Wright v. Martin, Harding and Mazzotti, LLP, Not Reported in Fed. Supp. (2022)

2022 WL 19795849

**ORDERED** that Plaintiff's application to proceed *in forma pauperis* (Dkt. No. 2) is **DENIED as moot**; and it is further

**ORDERED** that Plaintiff's motion for ECF login and password (Dkt. No. 4) is **GRANTED**; and it is further

**ORDERED** that the Clerk of the Court is directed to assign Plaintiff an ECF login and password; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITH LEAVE TO REPLEAD** Plaintiff's Complaint (Dkt. No. 1) to the extent that it asserts claims pursuant to Title VII against Defendant MHM because they fail to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITHOUT LEAVE TO REPLEAD** Plaintiff's Complaint (Dkt. No. 1) to the extent that it asserts claims pursuant to Title VII against Defendant Kazukenus because they fail to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further respectfully

**ORDERED** that the Clerk of the Court shall file a copy of this Order Report-Recommendation on Plaintiff, along with copies of the unpublished decisions cited herein in accordance

with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [5] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

[5]   If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**All Citations**

Not Reported in Fed. Supp., 2022 WL 19795849

---

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Wright v. Martin, Harding and Mazzotti, LLP, Not Reported in Fed. Supp. (2023)

2023 WL 2910511

2023 WL 2910511
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Eric F. WRIGHT Sr., Plaintiff,

v.

MARTIN, HARDING AND MAZZOTTI,
LLP, and Cassandra Anne Kazukenus,
Esq., individually, Defendants.

1:22-CV-515 (MAD/ML)
|
Signed April 12, 2023

**Attorneys and Law Firms**

ERIC F. WRIGHT SR., 1038 Regent Street, Schenectady,
New York 12309, Plaintiff, Pro Se.

**ORDER**

Mae A. D'Agostino, United States District Judge:

**\*1** *Pro se* Plaintiff Eric Wright, Sr. ("Plaintiff") commenced
this action on May 17, 2022, alleging discrimination,
retaliation, and a hostile work environment based on race in
violation of Title VII of the Civil Rights Act of 1964 ("Title
VII"), against Defendants Martin, Harding and Mazzotti,
LLP ("Defendant MHM") and Cassandra Anne Kazukenus,
Esq. ("Defendant Kazukenus"). *See* Dkt. No. 1. On the same
day, Plaintiff moved for leave to proceed *in forma pauperis*
("IFP"), *see* Dkt. No. 2, and to obtain an ECF login and
password. *See* Dkt. No. 4. On July 1, 2022, Plaintiff filed an
amended motion to proceed IFP. *See* Dkt. No. 6.

On July 19, 2022, Magistrate Judge Miroslav Lovric issued
an Order and Report-Recommendation granting Plaintiff's
motions to proceed IFP and for an ECF login, and
recommending that the complaint be dismissed without
prejudice as to the claims against Defendant MHM, and with
prejudice as to the claims against Defendant Kazukenus.
*See* Dkt. No. 7. On August 2, 2022, Plaintiff filed an
objection to Magistrate Judge Lovric's Order and Report-
Recommendation. *See* Dkt. No. 8.

When a party files "[g]eneral or conclusory objections or
objections which merely recite the same arguments [that he
presented] to the magistrate judge," the court reviews those

recommendations for clear error. *O'Diah v. Mawhir*, No. 9:08-
CV-322, 2011 WL 933846, \*1 (N.D.N.Y. Mar. 16, 2011).
Accordingly, the Court will review the Order and Report-
Recommendation for clear error. After the appropriate review,
"the court may accept, reject or modify, in whole or in part,
the findings or recommendations made by the magistrate
[judge]." 28 U.S.C. § 636(b)(1). Plaintiff's opposition to
the Order and Report-Recommendation consists of a single
sentence broadly objecting to those sections recommending
dismissal of the complaint. *See* Dkt. No. 8 at 1.

"[I]n a *pro se* case, the court must view the submissions
by a more lenient standard than that accorded to 'formal
pleadings drafted by lawyers.' " *Govan v. Campbell*, 289
F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v.
Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted).
The Second Circuit has held that the court is obligated to
" 'make reasonable allowances to protect *pro se* litigants' "
from inadvertently forfeiting legal rights because they
lack a legal education. *Govan*, 289 F. Supp. 2d at 295 (quoting
*Taguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

The Court discerns no clear error in Magistrate Judge Lovric's
Order and Report-Recommendation. Magistrate Judge Lovric
correctly found that the Title VII claims against Defendant
Kazukenus must be dismissed without leave to replead. Title
VII does not provide for individual liability. *See Patterson
v. Cty. of Oneida, New York*, 375 F.3d 206, 221 (2d Cir.
2004). Any attempt to amend the claim against Defendant
Kazukenus would be futile for that reason. *See Ruffolo v.
Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993)
("Where it appears that granting leave to amend is unlikely to
be productive, ... it is not an abuse of discretion to deny leave
to amend").

**\*2** Magistrate Judge Lovric correctly found that the Title
VII claims against Defendant MHM must be dismissed with
leave to replead. Plaintiff's Title VII discrimination claim
must be dismissed because (1) Plaintiff has failed to factually
link—outside of conclusory allegations—that his termination
was related to discrimination based on his race, *see Eliacin
v. Fiala*, No. 9-CV-438, 2009 WL 4807610, \*2 (N.D.N.Y.
Dec. 8, 2009), *aff'd*, *Eliacin v. Cnty. of Broome*, 488 Fed.
Appx. 504 (2d Cir. 2012); and (2) Plaintiff's generalized
allegation that "similar conduct from non-Black, African
American males did not result in suspension, termination
from employment, or other disciplinary action," Dkt. No. 1
at ¶ 48, is factually insufficient to allege disparate treatment.
*See Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d

Case 5:25-cv-00101-DNH-TWD    Document 7    Filed 03/19/25    Page 46 of 60

Wright v. Martin, Harding and Mazzotti, LLP, Not Reported in Fed. Supp. (2023)
2023 WL 2910511

Cir. 2000) (discussing that a similarly situated employee is one similarly situated in "all material respects") (citation omitted). Plaintiff's Title VII retaliation claim also fails because Plaintiff has failed to allege, with specificity, what "unlawful employment practice" he opposed, or that he "made a charge, testified, assisted, or participated" in any Title VII enforcement "investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). Finally, Plaintiff's Title VII hostile work environment claim must be dismissed because Plaintiff failed to adequately allege (1) conduct that is objectively severe and pervasive, *see Redd v. New York Div. of Parole*, 678 F.3d 166, 175 (2d Cir. 2012) (" '[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances,' " including " 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance' ") (quotations omitted); *see also Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 261 (E.D.N.Y. 2012) ("As a general rule, to constitute a hostile work environment, 'incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive' ") (quotation omitted), *aff'd*, 713 F.3d 163 (2d Cir. 2013); and (2) that the hostile or abusive treatment was because of his race. *See Redd*, 678 F.3d at 178 (discussing the necessity of alleging the nexus of the hostility and discriminatory animus).

Finally, the Court agrees with Magistrate Judge Lovric that Plaintiff should be granted an opportunity to amend the claims against Defendant MHM out of deference to his *pro se* status. *See Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (" 'Generally, leave to amend should be freely given, and a pro se litigant in particular should be afforded every reasonable

opportunity to demonstrate that he has a valid claim' ") (quotation omitted).

After carefully reviewing the Order and Report-Recommendation, the entire record in this matter, and the applicable law, the Court hereby

**ORDERS** that Magistrate Judge Lovric's Order and Report-Recommendation (Dkt. No. 7) is **ADOPTED** in its entirety for the reasons set forth herein; and the Court further

**ORDERS** that the claims against Defendant Kazukenus are **DISMISSED with prejudice**; and the Court further

**ORDERS** that Defendant Kazukenus is **DISMISSED** from this action; and the Court further

**ORDERS** that the claims against Defendant MHM are **DISMISSED without prejudice and with leave to replead within THIRTY (30) DAYS** of the date of this Order; and the Court further

**ORDERS** that if Plaintiff fails to file an amended complaint within **thirty (30) days** of this Order, the Clerk of the Court shall enter judgment in Defendants' favor and close this case, without further order of this Court; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2023 WL 2910511

---

**End of Document**                     © 2025 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2025 Thomson Reuters. No claim to original U.S. Government Works.   2

2024 WL 5361071
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kimberly VIROLA, Plaintiff,

v.

Kevin Matthew GONYO, et al., Defendants.

1:24-CV-1393 (LEK/DJS)
|
Signed December 2, 2024

**Attorneys and Law Firms**

KIMBERLY VIROLA, Plaintiff Pro Se, Rensselaer, New York 12144.

**REPORT-RECOMMENDATION and ORDER** [1]

[1]     "A decision to deny or revoke IFP status [ ] is generally regarded as dispositive and thus falls outside [a magistrate judge's] purview." *Abreu v. Lira*, 2014 WL 4966911, at *2 n.1 (N.D.N.Y. Sept. 30, 2014) (citing *Kiobel v. Millson*, 592 F.3d 78, 92 (2d Cir. 2010)).

DANIEL J. STEWART, United States Magistrate Judge

**\*1** The Clerk of the Court has sent to the undersigned for review a Motion for Leave to Proceed *In Forma Pauperis* ("IFP") filed by *pro se* Plaintiff Kimberly Virola. Dkt. No. 2.

A court may authorize a litigant to proceed *in forma pauperis* if it determines that he or she is unable to pay the filing fee. 28 U.S.C. § 1915(a)(1). "The decision of whether to grant an application to proceed IFP rests within the sound discretion of the court." *Deep v. Boies*, 2010 WL 11526763, at *1 (N.D.N.Y. Mar. 19, 2010) (citation omitted).

As a standard for determining eligibility for IFP status, section 1915(a)(1) does not set financial guideposts; instead, the statute merely provides that IFP status may be granted when the court is satisfied "that the person is unable to pay such fees or give security therefor." 28 U.S.C. § 1915(a)(1). To make this threshold showing a plaintiff must demonstrate "that paying such fees would constitute a serious hardship on the plaintiff, not that such payment would render plaintiff destitute." *Fiebelkorn v. U. S.*, 77

Fed. Cl. at 62 (citing *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339, 69 S. Ct. 85 (1948)). Put another way, section 1915(a)(1) does not require a showing of absolute destitution to qualify for IFP status. *Lee v. McDonald's Corp.*, 231 F.3d 456, 458 (8th Cir. 2000). As the Second Circuit has noted, "[n]o party must be made to choose between abandoning a potential meritorious claim or foregoing the necessities of life." *Potnick v. Eastern State Hosp.*, 701 F.2d 243, 244 (2d Cir. 1983) (citing *Adkins*, 335 U.S. at 339, 69 S. Ct. at 89).

*Id.*

Plaintiff's IFP application stated that she is employed. Dkt. No. 2 at p. 1. She did not, however, answer the following question seeking information about how much money she earns from that employment. *Id.* This is critical information for the Court to assess whether Plaintiff has the ability to pay the filing fee here. "[B]ecause the motion lacks complete information necessary to assess whether plaintiff is unable to pay the filing fees, the undersigned recommends that it be DENIED WITHOUT PREJUDICE." *Underwood v. Pratt & Whitney*, 2023 WL 11897989, at *1 (D. Conn. Apr. 18, 2023).

The Court recommends that the District Court deny the IFP application, but afford Plaintiff the opportunity to submit a new application containing more detailed information about her income, assets, and other financial obligations.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) [2] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

[2]     If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

2024 WL 5361071

**\*2  IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2024 WL 5361071

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 4966911
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Carlos ABREU, Plaintiff,

v.

Michael J. LIRA, et al., Defendants.

No. 9:12–CV–1385 (NAM/DEP).
|
Signed Sept. 30, 2014.

**Attorneys and Law Firms**

Carlos Abreu, Alden, NY, pro se.

Hon. Eric T. Schneiderman, New York State Attorney General, Joshua E. McMahon, Esq., Assistant Attorney General, Albany, NY, for Defendants.

### MEMORANDUM–DECISION AND ORDER

Hon. NORMAN A. MORDUE, Senior District Judge.

**\*1** By letter motion (Dkt. No. 59), defendants request that this Court take the following actions: reverse its preliminary finding that plaintiff, an inmate in the custody of New York State Department of Corrections and Community Supervision ("DOCCS"), was entitled to the imminent harm exception to the "three strikes" rule of 28 U.S.C. § 1915(g); revoke plaintiff's *in forma pauperis* status; and direct plaintiff to file the full $350 filing fee associated with this action before proceeding. As set forth briefly below, the motion is granted.

Section 1915, concerning proceedings *in forma pauperis,* provides in subdivision (g) as follows:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous,

malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). In its initial order (Dkt. No. 5) granting plaintiff's application for *in forma pauperis* status, the Court noted that its finding that plaintiff may be entitled to proceed *in forma pauperis* "is a preliminary finding, and plaintiff's *in forma pauperis* status will be revoked if, as the case progresses, it is determined that he did not face imminent danger of serious physical injury when he commenced this action or is otherwise not entitled to proceed *in forma pauperis."*

On this motion, defendants argue that, in fact, plaintiff did not face imminent danger of serious physical injury when he commenced this action, and that therefore his *in forma pauperis* status must be revoked. Defendants' motion is accompanied by a declaration from Amber A. Lashway, a Nurse Pratitioner employed by DOCCS. At the time plaintiff filed his complaint claiming that he was in "imminent danger of physical harm" Nurse Lashway was employed at New York State's Upstate Correctional Facility and was responsible for overseeing plaintiff's medical care. After two extensions of time, plaintiff filed an affidavit (Dkt. No. 68) and a letter (Dkt. No. 66) in opposition to the motion. Attached to these two submissions are exhibits totalling almost 300 pages (Dkt.Nos.66, 68).

Upon referral pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.3(c) United States Magistrate Judge David E. Peebles issued an excellent Report and Recommendation (Dkt. No. 73) recommending that plaintiff's *in forma pauperis* status be revoked and he be ordered to pay the full $350 filing fee and that, if plaintiff does not timely comply, the complaint be dismissed by the Clerk without further order of the Court. Plaintiff objects (Dkt.Nos.79, 82). Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court reviews *de novo* those parts of a report and recommendation to which a party specifically objects.

**\*2** In his objection, plaintiff argues that he does not have three strikes. The Court has reviewed the orders in the cases relied on by this Court and Magistrate Judge Peebles in determining that plaintiff had three strikes, and reaffirms that plaintiff does have three strikes.

In reviewing the issues surrounding plaintiff's claim that at the time he filed the complaint, he was facing imminent danger of serious physical injury, the Court agrees with Magistrate Judge Peebles' legal analysis and agrees that it is appropriate for the Court to review evidence outside the allegations of the complaint upon defendants' challenge to plaintiff's IFP status. Plaintiff has had ample opportunity to respond to defendants' challenge. Taking the entire record into account, including plaintiff's submissions in response to the Report and Recommendation, the Court finds that plaintiff's voluminous medical records, viewed in conjunction with Nurse Lashway's declaration and plaintiff's submissions, establish that plaintiff was not suffering any medical condition that would support a finding of imminent danger of physical injury at the time he filed the complaint herein. Nor was he in imminent danger in any other respect. There is no material question of fact warranting a hearing. Upon *de novo* review, the Court adopts Magistrate Judge Peebles' Report and Recommendation in its entirety.

It is therefore

ORDERED that the Report and Recommendation (Dkt. No. 73) is accepted; and it is further

ORDERED that defendants' motion (Dkt. No. 59) is granted; and it is further

ORDERED that plaintiff's *in forma pauperis* status is revoked and plaintiff is ordered to pay the full $350 filing fee in effect when he filed his complaint, with credit for any amounts previously collected from his prison account and forwarded to this Court, on or before October 31, 2014; and it is further

ORDERED that **PLAINTIFF IS WARNED THAT IF HE FAILS TO PAY THE FULL FILING FEE ON OR BEFORE OCTOBER 31, 2014, THE COMPLAINT WILL BE DISMISSED BY THE CLERK WITHOUT FURTHER ORDER OF THE COURT;** and it is further

ORDERED that the Clerk of the Court is directed to serve copies of this MemorandumDecision and Order in accordance with the Local Rules of the Northern District of New York.

IT IS SO ORDERED.

REPORT AND RECOMMENDATION [1]

[1] The decision to grant an application for leave to proceed *in forma pauperis* ("IFP") falls within my non-consensual jurisdiction under 28 U.S.C. § 636(b)(1)(A). *Woods v. Dahlberg,* 894 F.2d 187, 188 (6th Cir.1990). A decision to deny or revoke IFP status, however, is generally regarded as dispositive and thus falls outside my purview. *Woods,* 894 F.2d at 187; *accord, Kiobel v. Millson,* 592 F.3d 78, 92 (2d Cir.2010) ( "[C]ourts have decided that, in addition to the powers explicitly withheld from magistrate judges by § 636(b)(1)(A), the power of magistrate judges to 'determine' does not extend to rulings ... that deny a motion to proceed *in forma pauperis.* " ). Accordingly, in light of my finding that plaintiff is not entitled to proceed IFP, I have formatted this opinion as a report and recommendation.

DAVID E. PEEBLES, United States Magistrate Judge.

*Pro se* plaintiff Carlos Abreu, a New York State prison inmate, has commenced this action against several employees of the New York State Department of Corrections and Community Supervision ("DOCCS"), pursuant to 42 U.S.C. § 1983, alleging that he was deprived of his civil rights during the course of his incarceration. [2] Accompanying plaintiff's complaint was a request for leave to proceed *in forma pauperis* ("IFP"). Plaintiff's IFP application was granted by the court based upon a preliminary finding that, although Abreu has accumulated three strikes for purpose of 28 U.S.C. § 1915(g), he qualified for the imminent-danger exception to the three strikes provision at the time his complaint was filed.

[2] Plaintiff named forty-seven defendants in his complaint. *See generally* Dkt. No. 1. Certain of those defendants have since been dismissed from the suit based upon the court's initial review of his complaint. Dkt. No. 5.

**\*3** By letter received by the court, defendants' counsel has requested reconsideration of that earlier decision granting plaintiff leave to proceed in the action IFP on the basis that, at the time of filing, plaintiff did not face the imminent danger he alleged. For the reasons set forth below, I agree and recommend that plaintiff's IFP status be revoked.

I. *BACKGROUND*

Plaintiff commenced this action on September 10, 2012, by the filing of a complaint dated six days earlier, as well as an application seeking leave to proceeding in the action IFP and a motion for a preliminary injunction. Dkt. Nos. 1–3. At the time of filing, plaintiff was an inmate being held in the custody of the DOCCS at the Upstate Correctional Facility ("Upstate"), located in Malone, New York.[3] *See generally* Dkt. No. 1.

[3]     Upstate is a maximum security prison comprised exclusively of special housing unit ("SHU") cells in which inmates are confined for twenty-three hours each day, primarily for disciplinary reasons. *Samuels v. Selsky,* No. 01–CV–8235, 2002 WL 31040370, at *4 n. 11 (S.D.N.Y. Sept. 12, 2002).

On February 28, 2013, Senior District Judge Norman A. Mordue issued an order granting plaintiff's IFP application, and, after reviewing the complaint for legal sufficiency pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, permitted the action to go forward with regard to plaintiff's claims of (1) deliberate indifference to his serious medical needs, (2) denial of procedural due process with respect to disciplinary hearings and the imposition of a disciplinary diet, (3) unlawful retaliation based upon the filing of grievances, (4) cruel and unusual punishment based upon the conditions of plaintiff's confinement and interference with this right to receive mail, (5) denial of access to the courts, and (6) interference with plaintiff's right to practice his religion through the denial of religious meals, in violation of both the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc.[4]

[4]     Plaintiff's motion for a preliminary injunction was denied by decision and order issued by Judge Mordue on August 15, 2013. Dkt. No. 63.

In his decision granting plaintiff's IFP application, Judge Mordue found that, as of the date plaintiff signed his complaint, at least three of his prior actions and appeals had been dismissed as frivolous and/or for failure to state a claim upon which relief may be granted.[5] Dkt. No. 5 at 2–3. He nonetheless concluded, based upon the allegations in the complaint regarding whether plaintiff received adequate medical and mental health care while at Upstate, that Abreu qualified for the imminent danger exception under the three strikes provision of section 1915(g). *Id.* at 4. The court noted, however, that this was a **"preliminary finding,"** and advised that plaintiff's IFP status would be revoked should it later

be determined that he was not in fact in imminent danger of serious physical injury at the time the action was commenced. *Id.* (emphasis in original). In a footnote, the court added that "[d]efendants are ... entitled to refute this preliminary finding in future filings." *Id.* at 5 n. 5.

[5]     Judge Mordue based this finding, in part, on an earlier conclusion by Senior District Judge Lawrence E. Kahn that plaintiff had accumulated three strikes for purposes of section 1915(g). *See* Dkt. No. 5 at 2–3 (citing *Abreu v. United States,* No. 11–CV–1104, Dkt. No. 7 (N.D.N.Y. filed Sept. 19, 2011) (Kahn, J.)).

By letter dated July 11, 2013, defendants' counsel requested the court to reconsider its earlier IFP ruling. Dkt. No. 59. In support of their motion, defendants submitted a declaration of Nurse Practitioner Amber Lashway, one of the defendants in this action, refuting plaintiff's assertion that, at the time of filing, he faced imminent danger as a result of the medical treatment, or lack of treatment, provided to him at Upstate. Dkt. No. 59–1. Plaintiff has since responded in opposition to that motion, and the parties have filed reply and surreply papers.[6] Dkt. Nos. 66–68.

[6]     Ironically, in plaintiff's surreply (the filing of which violates the local rules of practice for this court in light of his failure to seek court permission prior to filing), he complains that defendants' letter motion requesting revocation of his IFP status does not comply with the local rules governing motion practice for this court. Dkt. No. 68 at 6. Because the court retains discretion to enforce the local rules for this court, and because both parties have, at different times, disregarded those rules, I deem it unnecessary to sanction either party for their violations. *Holtz v. Rockefeller & Co., Inc.,* 258 F.3d 62, 73 (2d Cir.2001) ("A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules.").

## II. *DISCUSSION*

**\*4** When a civil action is commenced in a federal district court, the statutory filing fee, set at $350 at the time plaintiff filed this action, must ordinarily be paid.[7] 28 U.S.C. § 1915(a). Although a court is authorized to permit a litigant to proceed IFP if it is determined that he is unable to pay the required filing fee, section 1915(g) provides that

7    Effective May 1, 2013, the Judicial Conference increased the fee for commencing an action in a federal district court from $350 to $400 by adding a $50 administrative fee. Because plaintiff commenced this action prior to the effective date of this increase, the filing fee in this case remains $350.

[i]n no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). The manifest intent of Congress in enacting this "three strikes" provision was to deter the filing of multiple, frivolous civil rights suits by prison inmates. *Tafari v. Hues,* 473 F.3d 440, 443–44 (2d Cir.2007) (citing *Nicholas v. Tucker,* 114 F.3d 17, 19 (2d Cir.1997)); *accord, Gill v. Pidlychak,* No. 02–CV–1460, 2006 WL 3751340, at *2 (N.D.N.Y. Dec. 19, 2006) (Scullin, S.J., *adopting report and recommendation by* Treece, M.J.). [8] The prophylactic effect envisioned under section 1915(g) is accomplished by requiring a prisoner who has accumulated three strikes to undertake the same cost-benefit analysis in which other civil litigants engage before filing suit—that is, whether the result sought to be achieved justifies paying the entire filing fee in advance, rather than in small increments from his inmate account. *Tafari,* 473 F.3d at 443.

8    All unreported decisions cited in this report have been appended for the convenience of the *pro se* plaintiff.

The Second Circuit has defined a frivolous claim as one that "lacks an arguable basis either in law or in fact." *Tafari,* 473 F.3d at 442. To determine whether a dismissal satisfies the failure-to-state-a-claim prong of section 1915, courts look to Rule 12(b)(6) of the Federal Rules of Civil Procedure for guidance. *Id.* The question of whether the dismissal of a prior action constitutes a strike for purposes of section 1915(g) is a matter of statutory interpretation, and as such a question for the court. *Id.*

Based upon the findings of District Judges Mordue and Kahn, as well as my own independent evaluation of plaintiff's litigation history, I conclude that plaintiff had incurred at least three strikes by the time he commenced this action in September 2012. *See Abreu v. Supreme Court of the Bronx Cnty.,* No. 10–CV–1310, Dkt. No. 4 (S.D.N.Y. filed Feb. 18, 2010) (dismissing plaintiff's complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)); *Abreu v. Disability Advocates, Inc.,* No. 09–CV–6306, Dkt. No. 8 (S.D.N.Y. filed July 15, 2009) (Second Circuit's mandate dismissing plaintiff's appeal because it "lack[ed] an arguable basis in law or fact"); *Abreu v. Disability Advocates, Inc.,* No. 09–CV–6306, Dkt. Nos. 3, 4 (S.D.N.Y. filed July 15, 2000) (dismissing the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)).

**5** As a safety valve, section 1915(g) provides that a prisoner who is in "imminent danger of serious physical injury" may avoid application of the three strikes rule in section 1915(g). 28 U.S.C. § 1915(g); *see also Malik v. McGinnis,* 293 F.3d 559, 562–63 (2d Cir.2002). In accordance with this exception, an inmate who has accrued three prior "strikes" but nonetheless wishes to commence a new action IFP must show that he was under imminent danger at the time of filing; the exception does not provide a basis to avoid application of the three-strikes rule on the basis of past harm. *Malik,* 293 F.3d at 562–63. An inmate who claims the benefit of this exception must also allege that the danger he faces rises to the level of exposure to a "serious physical injury." 28 U.S.C. § 1915(g). The term "serious physical injury," as utilized in section 1915(g), has been construed by various courts as including an ailment that "could result in serious harm or even death [.]" *Ibrahim v. D.C.,* 463 F.3d 3, 7 (D.C.Cir.2006); *accord, Jackson v. Jin,* No. 12–CV–6445, 2014 WL 1323211, at *1 (W.D.N.Y. Mar. 31, 2014).

The imminent danger claimed by the inmate must be real, and not merely speculative or hypothetical. *See, e.g., Johnson v. Barney,* No. 04–CV–10204, 2005 WL 2173950, at *1–2 (S.D.N.Y. Sept. 6, 2005) (finding that the plaintiff was not entitled to qualified immunity where he alleged that he faced a risk of harm at a facility in which he was not currently confined and may pass through infrequently). Claims of imminent danger, moreover, must be evaluated at the point in time when a plaintiff's complaint is filed, rather than when the events alleged occurred. *Malik,* 293 F.3d at 562–63; *accord, Pettus v. Morganthal,* 554 F.3d 293, 296 (2d Cir.2009).

For a three-strikes litigant to qualify for the imminent danger exception, his complaint "must reveal a nexus between the imminent danger it alleges and the claims it asserts." *Pettus,* 554 F.3d at 298. When determining whether the requisite relationship exists, a court must examine "(1) whether the

imminent danger of serious physical injury that a three-strikes litigant alleges is *fairly traceable* to unlawful conduct asserted in the complaint and (2) whether a favorable judicial outcome would *redress* that injury." *Id.* at 299 (emphasis in original).

In deciding whether a plaintiff qualifies to proceed IFP under the imminent-danger exception, neither the Second Circuit nor the district courts in this circuit have explicitly decided whether a court is confined the allegations contained in the complaint or instead may look to materials outside of the complaint. In *Chavis,* the Second Circuit offered the following guidance with respect to a court's analysis of the imminent-danger exception:

> [A]lthough the feared physical injury must be 'serious,' 'we should not make an overly detailed inquiry into whether the allegations qualify for the exception,' because [section] 1915(g) 'concerns only a threshold procedural question,' while 'separate PLRA provisions are directed at screening out meritless suits early on.' *Andrews v. Cervantes,* 493 F.3d 1047, 1055 (9th Cir.2007); *see also Ciarpaglini v. Saini,* 352 F.3d 328, 331 (7th Cir.2003) ( "Section 1915(g) is not a vehicle for determining the merits of a claim. To fine-tune what is 'serious enough' to qualify for the exception would result in a complicated set of rules about what conditions are serious enough, all for a simple statutory provision governing when a prisoner must pay the filing fee for his claim. This is not required.').

**\*6** 618 F.3d at 169–70 (alterations omitted). This language, as well as the court's analysis in *Chavis,* suggests that, when determining whether a litigant is entitled to section 1915(g)'s imminent-danger exception, a court should confine its attention to the allegations contained in a plaintiff's complaint. *See id.* at 170–71 (analyzing the plaintiff's amended complaint, and concluding that his allegations therein "by [themselves] would appear to be sufficient to allege imminent danger of serious physical injury"). [9] Similarly, an analysis of at least one of the cases cited by the Second Circuit reiterates the view that courts should focus on the allegations in a plaintiff's complaint when analyzing imminent danger. [10] *See Cervantes,* 493 F.3d at 1055 ("Instead, the exception applies if the complaint makes a plausible allegation that the prisoner faced imminent danger of serious physical injury at the time of filing." (quotation marks omitted)). [11] Courts in this district have also seemingly held that an imminent-danger inquiry requires only an analysis of the allegations in the complaint. *See, e.g., Williams v. Fisher,* No. 11–CV–0379, 2013 WL 636983,

at \*9 (N.D.N.Y. Jan. 29, 2013) (Dancks, M.J.), *report and recommendation adopted by* 2013 WL 628641 (N.D.N.Y. Feb. 20, 2013) (Mordue, J.), ("Courts, including the District Court in this case, 'maintain a singular focus on the facts alleged in the complaint' in deciding whether a prisoner qualifies for the imminent danger exception." (quoting *Cervantes,* 493 F.3d at 1053)); *Henderson v. Clover Field,* No. 08–CV–0504, 2008 WL 2405705, at \*3 n. 2 (N.D.N.Y. June 11, 2008) (McCurn, J., *adopting report and recommendation by* Lowe, M.J.) ("When determining whether a prisoner has qualified for the 'imminent-danger' exception, courts look at the non-conclusory allegations in the plaintiff's complaint." (listing cases)). [12]

[9]    Interestingly, the Second Circuit supplemented its finding in *Chavis* that the allegations in the plaintiff's amended complaint were sufficient to satisfy the imminent-danger exception by considering "the additional assertions that [plaintiff] included in his motion for a preliminary injunction." 618 F.3d at 171. The court explained that, "[a]lthough these additional facts came in an order to show cause, rather in [plaintiff]'s motion for leave to amend, 'a party appearing without counsel is afforded extra leeway in meeting the procedural rules governing litigation,' and hence 'courts are, for example, to construe a *pro se* litigant's pleadings and motions liberally.' " *Id.* (quoting *In re Sims,* 534 F.3d 117, 133 (2d Cir.2008)). In light of that explanation, I do not construe *Chavis* to be internally inconsistent— that is, on the one hand instructing courts to consider only the four corners of a complaint when deciding an imminent danger inquiry, and on the other permitting consideration of materials outside of the complaint. Rather, I simply construe the Second Circuit's consideration of materials outside of the complaint, which were consistent with the allegations contained in the amended complaint, as yet another exercise of this circuit's practice of extending special solicitude to *pro se* litigants. *See, e.g., Jackson v. Onondaga Cnty.,* 549 F.Supp.2d 204, 219 (N.D.N.Y.2008) (McAvoy, J., *adopting report and recommendation by* Lowe, M.J.) ("I am mindful that, in cases where a *pro se* civil rights plaintiff is faced with a motion to dismiss for failure to state a claim, courts will often (out of special solicitude) consider materials outside the complaint

2014 WL 4966911

to the extent they are consistent with the allegations in the complaint.").

10    With respect to the Seventh Circuit case cited in *Chavis,* that court's decision does not indicate whether it was presented with anything except the plaintiff's allegations contained in the complaint. *See Ciarpaglini,* 352 F.3d at 331 (analyzing the defendants' argument that the plaintiff's "allegations are not serious enough" and, in any event, the "complaint ... alleges way too much"); *see also Taylor v. Watkins,* 623 F.3d 483, 485 (7th Cir.2010) ("[I]n [*Ciarpaglini* ] the defendants did not *deny* the plaintiff's allegations [regarding imminent danger]. Instead, the defendants argued that the allegations were not sufficiently *serious* to meet the imminent-danger exception [.]" (emphasis in original)).

11    In *Cervantes,* the Ninth Circuit acknowledged that, at that time, "no other circuit has specifically addressed post-complaint changes in circumstance," 493 F.3d at 1053, which is analogous to what defendants ask the court to do in this case.

12    The court in *Henderson* considered, for the first time, whether the plaintiff qualified for IFP status based on the imminent-danger exception. 2008 WL 2405705, at *1. In contrast, the court in *Williams* considered whether the plaintiff was entitled to the exception for a second time in light of the defendants' motion to dismiss based on an assertion that the plaintiff's complaint did not allege facts plausibly suggesting he faced imminent danger of serious physical injury. 2013 WL 636983, at *1. Neither the *Henderson* nor *Williams* courts, however, were asked to consider material outside of the pleadings to make their determinations regarding imminent danger.

In contrast to the Second and Ninth Circuit's apparent approaches to making an imminent-danger determination, other courts, including the Seventh Circuit, have found it appropriate to consider evidence submitted in support of or opposition to the plaintiff's allegations. In *Taylor,* decided seven years after *Ciarpaglini,* the Seventh Circuit considered whether the district court erred in holding an evidentiary hearing to examine the plaintiff's allegations regarding imminent danger. *Taylor,* 623 F.3d at 485. After finding that *Ciarpaglini* merely held that "a court ... should

not attempt to evaluate the seriousness of a plaintiff's claims," the court explained that

> it has never been the rule that courts must blindly accept a prisoner's allegations of imminent danger. Courts routinely deny IFP requests where the imminent-danger allegations are conclusory or ridiculous, or where they concern only past injuries. In the same vein, we agree with the district court in this case and the Third Circuit ... that when a defendant contests a plaintiff's claims of imminent danger, a court must act to resolve the conflict. A contrary conclusion would mean that a three-strikes plaintiff could proceed IFP whenever his allegations of imminent danger were facially plausible, even if the defendant had incontrovertible proof that rebutted those allegations. Such a rule would allow easy evasion of the three-strikes rule.

**\*7** *Id.* at 485. As suggested in that passage, the Seventh Circuit's holding in this regard is consistent with the view of the Third Circuit. *See Gibbs v. Roman,* 116 F.3d 83, 86 (3d Cir.1997), *overruled on other grounds by Abdul– Akbar v. McKelvie,* 239 F.3d 307, 312 (3d Cir.2001), ("If the defendant, after service, challenges the allegations of imminent danger ..., the district court must then determine whether the plaintiff's allegation of imminent danger is credible ... in order for the plaintiff to proceed on the merits [IFP]."). The Tenth Circuit has similarly concluded that a court must resolve a challenge to a preliminary finding that the plaintiff's complaint alleged sufficient facts to entitle him for the imminent danger exception. *See Stine v. U.S. Fed. Bureau of Prisons,* 465 F. App'x 790, 794 n. 4 (10th Cir.2012) ("[A]fter a district court provisionally grants IFP on the basis of a showing of imminent danger, the defendants are permitted to mount a facial challenge, based on full development of the facts, to the district court's provisional determination *on the face of the complaint* that [the prisoner] satisfies the imminent danger element." (quotation marks omitted, emphasis and alteration in original)).

After careful consideration, I find that the Second Circuit's suggestion in *Chavis* that courts should restrict their attention to the four corners of a complaint in connection with an imminent-danger inquiry applies only to the court's initial review of the complaint. The Second Circuit was not asked in *Chavis* to consider how a court should approach a defendant's subsequent challenge to an imminent-danger finding, nor was it asked to analyze evidence adduced after the complaint was filed that may refute a court's initial finding that the complaint plausibly alleged facts suggesting plaintiff was in imminent danger of a serious physical injury at the time the action was commenced. To the extent that a court may need to undertake a "detailed inquiry" when faced with a challenge to a preliminary finding that a plaintiff is entitled to the imminent-danger exception, *Chavis,* 618 F.3d at 169, I conclude that the Third, Seventh, and Tenth Circuits accurately rely on the court's obligation under section 1915(g) to ensure a plaintiff qualifies for IFP status before permitting a case to proceed. *See, e.g., Gibbs v. Cross,* 160 F.3d 962, 967 n. 8 (3d Cir.1998) ("We are mindful that [a section 1915(g) analysis] will often times necessitate further factfinding proceedings once the imminent danger allegation is challenged; a by product of the PLRA most likely not contemplated by Congress, but which must nonetheless be handled by the courts."). In my view, that obligation cannot be set aside merely because the issue involves a procedural matter.

Accordingly, I conclude that a court is permitted, and indeed has a duty, to examine all of the available evidence to determine whether a plaintiff's allegations regarding imminent danger to serious physical injury are credible, if challenged by a defendant. *Taylor,* 623 F.3d at 485; *Stine,* 465 F. App'x at 794 n. 4; *Roman,* 116 F.3d at 86; *see also Tafari v. Baker,* No. 11–CV–0694, 2012 WL 5381235, at *1 (N.D.N.Y. Oct. 31, 2012) (Sharpe, C.J.) (finding it necessary to hold an evidentiary hearing to determine whether the plaintiff's allegations of imminent danger were credible). When examining the available evidence in this regard, I remain mindful that the analysis "should not evolve into a full-scale merits review, though in many cases, ... the allegations of imminent danger are linked to the allegations underlying the suit." *Taylor,* 623 F.3d at 486. "In resolving a contested issue of imminent danger, the district court may rely upon evidence supplied by sworn affidavits or depositions, or, alternatively, may hold a hearing." [13] *Roman,* 116 F.3d at 86–87; *accord, Tafari,* 2012 WL 5381235, at *6; *Taylor,* 623 F .3d at 486; *see also Pettus v. Oakes,* No. 09–CV–6263, 2010 WL 456782, at *2 (W.D.N.Y. Feb. 4, 2010) (relying on the allegations in plaintiff's amended complaint,

the plaintiff's statements made during at a video conference, and a declaration submitted by the plaintiff's attorney to find that the plaintiff "exaggerated his claims in order to fit within the exception to the 'three-strikes' rule of [section] 1915(g)").

[13]     As it concerns the particular case now before me, it is worth noting that plaintiff has not objected to defendants' reliance on materials outside his complaint to support their motion to revoke his IFP status. *See generally* Dkt. No. 66. Indeed, in his response to that motion, plaintiff has submitted his own evidence for consideration. *Id.* Accordingly, it appears that plaintiff has waived any objection to the court's consideration of and reliance on all of the record evidence now before me in deciding the defendants' motion.

**\*8**  In this case, liberally construed, the allegations in plaintiff's complaint suggest that, at time of filing, he was in imminent danger of serious physical harm for three reasons. First, he alleges that he faced imminent danger based on the imposition of Upstate security staff of a restricted diet for more than seven days. Dkt. No. 1 at 17–18. Second, plaintiff alleges that he faced imminent danger due to the defendants' alleged failure to provide him with adequate medical treatment while at Upstate. *Id.* at 19–20, 32. Third, he alleges that he was in imminent danger because he continued to experience suicidal thoughts and defendants ignored his requests for care. *Id.* at 60. In support of their motion to revoke plaintiff's IFP status, defendants have submitted a declaration from defendant Lashway, a nurse practitioner at Upstate who appears to have served as plaintiff's primary care provider in and around the time his complaint was filed. Dkt. No. 59–1. Defendants also rely on plaintiff's medical records and a declaration from Dr. Robert Bentivegna, a physician employed at Green Haven Correctional Facility, both of which were submitted to the court in opposition to plaintiff's motion for a preliminary injunction. Dkt. Nos. 55, 56.

With respect to plaintiff's allegations that the restricted diet caused him to be in imminent danger of serious physical harm, I find that his medical records belie that allegation. Although it is true, as plaintiff alleges, that he complained to medical staff at Upstate regarding his stomach pains and constipation during the time that he was on the restricted diet, his medical records demonstrate that he either was seen by medical staff, or medical staff attempted to evaluate him, on each day he was on the diet. Dkt. No. 56 at 86–90. Medical staff did not report any serious medical concerns regarding plaintiff's

health during that time. *Id.* In addition, defendant Lashway averred that the restricted diet is nutritionally adequate and imposed as a disciplinary measure only after security staff consults with medical staff. Dkt. No. 59–1 at 2. In light of the daily monitoring plaintiff received by Upstate medical providers while on the restricted diet, and the medical records that demonstrate plaintiff was not suffering from any serious conditions during that time, I find he was not in imminent danger of serious physical injury at the time he commenced this action due to the imposition of the restricted diet. *See Wallace v. Cockrell,* No. 03–MC–0060, 2003 WL 21528744, at \*2 (N.D.Tex. July 3, 2003) (finding the plaintiff's allegation that he was being starved while on a food loaf diet did not establish entitlement to the imminent-danger exception).

Plaintiff also alleges that he was in imminent danger of serious physical injury due to defendants' discontinuation of his prescription for (1) an asthma inhaler; (2) Atorvastatin, Lipitor, or equivalent for treatment of high cholesterol; (3) Claritin, Loratadine, or equivalent for allergies; (4) Naproxen or equivalent for pain relief; (5) Docusate or another stool softener for constipation; and (6) eyeglasses. Dkt. No. 1 at 19–20; Dkt. No. 66 at 7–8, 13. In response to these allegations, defendant Lashway has averred that, on or about August 16, 2012, plaintiff was given his medications by a nurse employed at Upstate while in his cell, but instead of taking them, he threw them onto the floor outside his cell. Dkt. No. 59–1 at 4 Dkt. No. 56 at 95. Immediately following this incident, defendant Lashway undertook an evaluation of plaintiff's health status, which, in her opinion, revealed that he no longer needed those medications to maintain his general health. Dkt. No. 59–1 at 4. For that reason, and because of plaintiff's refusal to accept the medication, defendant Lashway discontinued his medications.[14] *Id.*

[14]    As will be discussed below, defendant Lashway restarted him on his medications less than one month later. Dkt. No. 56 at 18.

**\*9** Defendant Lashway also states that plaintiff's asthma inhaler prescription was never discontinued, and, on September 17, 2012, seven days after plaintiff filed his complaint in this action, he underwent a routine evaluation in accordance with his asthma treatment plan. Dkt. No. 59–1 a 5; Dkt. No. 56 at 8. During that evaluation, plaintiff claimed that he was not currently using his inhaler and had suffered no asthma-related episodes. Dkt. No. 59–1 at 5; Dkt. No. 56 at 8, 85. In addition, because plaintiff complained at that appointment that certain of his medications had been

discontinued, defendant Lashway refilled his prescriptions for Naproxen, Claritin, Lipitor, and Colace four days later. Dkt. No. 56 at 18.

In general, plaintiff's medical records demonstrate that he was under close medical supervision in and around the time he filed his complaint in this matter. *See generally* Dkt. No. 56. He was informed who to speak to about his eyeglasses, his complaints were noted throughout his medical records, staff recorded their observations and opinions regarding plaintiff's status, and he was given medication when requested. *Id.* There is nothing in the record now before the court suggesting that, due to defendants' alleged failure to provide medicine, eyeglasses, or medical treatment to plaintiff, he was in imminent danger of an ailment that "could result in serious harm or even death" at the time he filed this action.[15] *Ibrahim,* 463 F.3d at 7.

[15]    In his response to the pending motion, plaintiff disputes defendant Lashway's veracity with regard to whether he refused medical care or medication. Dkt. No. 66 at 9, 12. His response, however, which is formatted as a letter addressed to me and is not signed under oath, does not point to any record evidence that would otherwise verify his statements. *See generally* Dkt. No. 66.

Plaintiff's complaint also alleges that he "continue[s] feeling suicidal" and has informed all defendants of this. Dkt. No. 1 at 60. Plaintiff's medical records, however, do not note that he experienced suicidal ideations in or around September 2012. *See generally* Dkt. No. 56. Moreover, in her declaration, defendant Lashway states that, "had plaintiff articulated to anyone that he was suicidal or harbored thoughts of suicide, he would have been placed on a 1:1 watch and restricted to the infirmary under the supervision of personnel within the New York State Office of Mental Health." Dkt. No. 59–1 at 6. A review of plaintiff's medical records, however, reveals that he was not restricted in and around the time he filed his complaint. *See generally* Dkt. No. 56.

Plaintiff's mental health records, which were submitted by plaintiff as an exhibit attached to his complaint, indicate that he allegedly swallowed fifty-five pills as a suicide attempt on July 18, 2012. Dkt. No. 4–3 at 155. As a result of that incident, plaintiff was transferred to a local hospital for evaluation and placed on one-to-one observation while at the hospital. *Id.* Upon his return to the prison facility, he was admitted to the Residential Crisis Treatment Program ("RCTP") where he

remained on one-to-one observation every day until he was released back to SHU confinement. *Id.* at 155, 169–74. New York State Office of Mental Health ("OMH") staff evaluated plaintiff every day while he was in the RCTP and generated daily notes regarding his status. *Id.* at 169–74. Generally, those notes indicate plaintiff was calm and cooperative while in the RCTP from July 18, 2012, through July 23, 2012. *Id.* On July 23, 2012, a nurse practitioner evaluated plaintiff and reported in his records that he did not harbor suicidal or homicidal ideations. *Id.* at 168. The report also indicates that plaintiff "presents with no manic, no depressed, no anxious, no psychotic symptoms." *Id.* at 168. On that date, plaintiff was released back to the SHU. *Id.* A note in plaintiff's mental health records shows that prison officials followed up with him the next day, at which time they noted he slept soundly, "[d]iscussed his court adventure," and showed no signs of acute distress. *Id.* at 175.

**\*10** Aside from these records, there is no evidence now before the court regarding plaintiff's allegations of suicidal thoughts or ideations, including any suicidal thoughts he might have had in or around the time he filed his complaint in September 2012. In any event, however, the mental health records regarding plaintiff's alleged suicide attempt in July 2012 demonstrate that his complaints were not ignored by anyone employed by the DOCCS or OMH. They also reflect that, just days after his attempt, his suicidal thoughts subsided and he was returned to the SHU. Accordingly, to the extent that plaintiff alleges that his suicide attempt in July 2012 establishes an imminent danger of serious harm in or around September 2012, when this action was commenced, I find that his mental health records refute that allegation. [16]

[16]    I also note that, in response to the pending motion, plaintiff emphasizes that defendant Lashway does not work for the OMH and therefore does not have sufficient knowledge to testify regarding his suicidal thoughts. Dkt. No. 66 at 14. This assertion, however, is directly contradicted by the fact that, in his complaint, plaintiff explicitly alleged that he notified all defendants of his suicidal thoughts. Dkt. No. 1 at 60.

Based on the evidence now before me, including, as noted earlier, a clear record that plaintiff was under close medical care at the time this action was commenced, I find that he was not in imminent danger of serious physical harm due to defendants' alleged failure to respond to plaintiff's complaints of feeling suicidal.

Finally, before concluding, I pause to respond to plaintiff's additional allegations set forth for the first time in his response to the pending motion. He alleges that he was in imminent danger of serious physical injury due to an alleged assault that occurred at Upstate on December 3, 2012, and January 25, 2013. Dkt. No. 66 at 17. As noted earlier, plaintiff's response to the pending motion is not verified or otherwise sworn under penalty of perjury, and thus constitutes mere argument rather than evidence. *Lipton v. Nature Co.,* 71 F.3d 464, 469 (2d Cir.1995); *see also Smythe v. Am. Red Cross Blood Servs. NE N.Y. Region,* 797 F.Supp. 147, 152 (N.D.N.Y.1992) (McCurn, J.) ("It is not well-settled that the legal memoranda and oral argument are not evidence [.]" (quotation marks omitted)). In addition, plaintiff's medical records in and around December 3, 2012, do not reflect any indication that plaintiff was "assaulted, beaten, and sexually abused" by correctional officers at Upstate. Dkt. No. 56 at 57–61. While his medical records surrounding January 25, 2013, reflect complaints from plaintiff that he was beaten and assaulted by prison staff, plaintiff's complaint in this action does not he allege that he suffered imminent danger at the time of filing due to a threat of assault by Upstate staff. *See generally* Dkt. No. 1. Moreover, to the extent that the complaint or plaintiff's response to the pending motion could be construed as referencing a threat of physical assault by Upstate correctional staff, I find that they are merely conclusory. *See Ciarpaglini,* 352 F.3d at 331 ("Courts also deny leave to proceed IFP when a prisoner's claims of imminent danger are conclusory or ridiculous."); *Avent v. Fischer,* 07–CV–1135, 2008 WL 5000041, at \*6 (N.D.N.Y. Nov. 20, 2008) (Hurd, J., *adopting report and recommendation by* Lowe, M.J.) ("[U]nless the prospect of ... a future assault is so specific and/or likely as to be deemed *real,* such an allegation will not suffice to allege an 'imminent danger on the date of the filing. This point of law is consistent with the rather well-established rule that the imminent danger claimed by the inmate must be real, and not merely speculative or hypothetical.") (quotation marks and citations omitted)).

**\*11** For all of the foregoing reasons, I conclude that plaintiff is not entitled to the imminent-danger exception to the three-strikes rule under section 1915(g).

III. *SUMMARY AND RECOMMENDATION*

My independent review of plaintiff's litigation history confirms the findings of District Judges Kahn and Mordue regarding the fact that plaintiff had accumulated three strikes within the meaning of section 1915(g) by the time this action

was commenced. In addition, the record evidence, which includes plaintiff's medical records while in the custody of the DOCCS, establishes that the court's preliminary finding of imminent danger cannot be substantiated. Accordingly, it is hereby respectfully

RECOMMENDED that plaintiff's IFP status be revoked and he be ordered to pay the full $350 filing fee, with credit afforded for any amounts previously collected from his prison account and forwarded it to this court, within thirty days of the date of an order adopting this recommendation; and it is further

RECOMMENDED that, if plaintiff fails to timely comply with any directive to pay the full filing fee, his complaint be dismissed by the clerk without further order of the court.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated: April 11, 2014.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 4966911

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 317243
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kimberly VIROLA, Plaintiff,

v.

Kevin Matthew GONYO, et al., Defendants.

1:24-cv-1393 (LEK/DJS)
|
Signed January 28, 2025

**Attorneys and Law Firms**

Kimberly Virola, Renselar, NY, Pro Se.

### MEMORANDUM-DECISION AND ORDER

LAWRENCE E. KAHN, United States District Judge

## I. INTRODUCTION

**\*1** Plaintiff Kimberly Virola commenced this action by filing a complaint, Dkt. No. 1 ("Complaint"), and an application to proceed in forma pauperis, Dkt. No. 2 ("IFP Application"). On December 2, 2024, the Honorable Daniel J. Stewart, United States Magistrate Judge, issued a report and recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d), recommending the Court deny the IFP Application and grant Plaintiff the opportunity to submit a new application. Dkt. No. 5 ("Report and Recommendation") at 2.

No party has filed objections to the Report and Recommendation. For the reasons that follow, the Court adopts the Report and Recommendation in its entirety.

## II. BACKGROUND

In the Report and Recommendation, Judge Stewart found that on Plaintiff's IFP Application, she "stated that she is employed," but she did not "answer the following question seeking information about how much money she earns from that employment." R. & R. at 2. Judge Stewart noted that the amount of Plaintiff's income "is critical information for the Court to assess whether [she] has the ability to pay the filing fee here." *Id.* Accordingly, Judge Stewart recommended denying the IFP Application but affording Plaintiff "the opportunity to submit a new application containing more

detailed information about her income, assets, and other financial obligations." *Id.*

## III. LEGAL STANDARD

"Within fourteen days after being served with a copy [of the Magistrate Judge's report and recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court." 28 U.S.C. § 636(b)(1)(C); *see also* L.R. 72.1. However, if no objections are made, a district court need only review a report and recommendation for clear error. *See DiPilato v. 7-Eleven, Inc.*, 662 F. Supp. 2d 333, 339 (S.D.N.Y. 2009) ("The district court may adopt those portions of a report and recommendation to which no timely objections have been made, provided no clear error is apparent from the face of the record."). Clear error "is present when upon review of the entire record, the court is left with the definite and firm conviction that a mistake has been committed." *Rivera v. Fed. Bureau of Prisons*, 368 F. Supp. 3d 741, 744 (S.D.N.Y. 2019) (cleaned up). Upon review, a court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

## IV. DISCUSSION

No party objected to the Report and Recommendation within fourteen days after being served with a copy of it. Accordingly, the Court reviews the Report and Recommendation for clear error. *See DiPilato*, 662 F. Supp. 2d at 339. Having found none, the Court approves and adopts the Report and Recommendation in its entirety. The Court provides Plaintiff thirty days to file an amended IFP application.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Report and Recommendation, Dkt. No. 5, is **APPROVED and ADOPTED in its entirety**; and it is further

**\*2 ORDERED**, that Plaintiff's IFP Application, Dkt. No. 2, is **DENIED**; and it is further

**ORDERED**, that if Plaintiff does not file an amended IFP application within thirty (30) days of this Memorandum-Decision and Order, the Clerk shall close this action without further order from the Court; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2025 WL 317243

---